## Meehan, Appellants, *v.* Shreveport-Eldorado Pipe Line Co., Inc.

Argued November 16, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunning-
ham, Baldrige, Stadtfeld and Parker, JJ.

J. C. Davies, for appellants.

Morton Meyers, of Graham, Yost & Meyers, for
appellee.

Opinion by Cunningham, J., January 25, 1933:

Prior to October 22, 1930, H. J. Meehan, plaintiffs'
father, had been endorser upon six trade acceptances,
given by the Universal Oil Company and payable to
the order of Shreveport-Eldorado Pipe Line Com-
pany; each obligation was duly protested for non-pay-
ment—the first on August 2d and the last on Septem-
ber 3, 1929. Partial payments were made, but a bal-

ance of $1,588.84 remained unpaid on October 22, 1930, and H. J. Meehan then executed and delivered to the Shreveport-Eldorado Pipe Line Company three judgment notes, each in the sum of $529.61. Judgments having been confessed, executions were issued June 10, 1931, by virtue of which the sheriff of Cambria County levied upon a cow, horse, piano, three bookcases, and other pieces of furniture, etc., as his property. Thereupon, three of his daughters, Kathleen, Hilda and Vera Meehan, claimed the property, gave bond, and were made plaintiffs in the sheriff's interpleader proceedings—the execution creditor, Shreveport-Eldorado Pipe Line Company, Inc., being the defendant therein.

The case came on for trial January 13, 1932, before REED, President Judge of the orphans' court, specially presiding, and a jury. Kathleen Meehan testified in behalf of the plaintiffs, basing their title upon an alleged gift from their father. She produced a letter from him, dated October 24, 1929, and addressed to her sisters and herself. The portion admitted read: "I hereby give to you all the furniture in the house that you do not already own." By way of explanation, she stated a separation had occurred between her parents; that the articles referred to were located in the home, named "Greystone," title to which was held by her parents by entireties; that her mother would not agree to give the real estate to plaintiffs, and her father, therefore, "gave [them] what he could, what he had himself, what already did not belong to [them]."

There was also identified and offered in evidence a formal bill of sale from her father, transferring to plaintiffs the personal property detailed in a schedule thereto attached for the consideration of one dollar; it was dated October 26, 1929, and the record shows the following offer by counsel for plaintiffs, objection

thereto by counsel for defendant, and ruling by the trial judge:

"By Mr. Davies: We offer in evidence the bill of sale testified to by the witness and marked for identification as Plaintiffs' Exhibit No. 4.

"By Mr. Meyers: Objected to for the reason that it was made at a time subsequent to the date that H. J. Meehan became indebted to the Shreveport-Eldorado Pipe Line Company.

"By the Court: The objection is overruled for the present because there is nothing before the court to show but what the party who delivered it had ample property at that time to cover all of his indebtedness. Exception noted and bill sealed for the defendant."

It was stated by Kathleen Meehan, on cross examination, that the property remained, after the alleged transfer of title, where it had been prior thereto. It was stipulated on the record that the value of the property, as fixed by the sheriff's appraisers, was $1,268.50.

Counsel for plaintiffs closed their case without offering any evidence tending to show that although the gift was made subsequent to the protesting of the trade acceptances, H. J. Meehan had retained sufficient assets to pay his creditors.

Defendant offered no testimony, and each side presented a point for binding instructions; the trial judge denied plaintiffs', affirmed defendant's, and directed the jury to return a verdict in favor of the defendant for the above stated value of the property. Counsel for plaintiffs excepted to the charge, and, on January 16th, filed motions for a new trial and for judgment n.o.v., and was granted leave to file additional reasons for a new trial. It is contended by him that these motions were disposed of by the trial judge alone, but the record is to the contrary. In the opinion, filed April 16, 1932, it is stated they were argued before the three judges of the common pleas and the trial judge. The opinion is signed by the trial judge, for the court,

and in it are stated at length the reasons, supported by the citation of authorities, upon which the court below reached the conclusion that the trial judge had not erred in directing a verdict for the defendant. The action taken is inaptly described in the decree as the denial of plaintiffs' motion "to strike off the order" directing the verdict, but the plain intention was to dismiss their motion for a new trial. No disposition was then made of the motion for judgment n.o.v.

On April 23, 1932, counsel for plaintiffs filed additional reasons for a new trial; among them was the averment that he "offered no evidence to show the solvency of H. J. Meehan at the time the gift was made," because he understood the effect of the above quoted ruling of the trial judge, upon the admissibility of the bill of sale, to be that the burden was not on plaintiffs to show such solvency, but was upon defendant to show insolvency.

On April 26, 1932, the trial judge, inadvertently overlooking the fact that additional reasons for a new trial had been filed, amended the decree of April 16th to include therein a denial of plaintiffs' motion for judgment n.o.v., and, on April 28, judgment was entered in favor of the defendant on the verdict.

On May 5, 1932, counsel for plaintiffs presented his petition directing attention to the fact that judgment had been entered without considering or disposing of his supplemental and additional reasons for a new trial; in this petition he averred the trial judge "had, in effect, ruled as a matter of law that it was not incumbent upon plaintiffs to prove that H. J. Meehan was solvent" at the time the gift was made, that he relied upon such ruling, and "therefore offered no evidence to show" his solvency, and that "plaintiffs could and would have proven said solvency of H. J. Meehan but for the ruling above mentioned."

Upon this petition the court granted two rules on the defendant requiring it to show cause: (a) why the

decree denying plaintiffs' motions for judgment n.o.v., and for a new trial should not be revoked; and (b) why the judgment entered on the verdict "should not be opened and the case be reargued."

In the answer to these rules, filed by counsel for defendant, this averment was included: "Before the court affirmed defendant's point, the jury was sent out and counsel for the plaintiffs argued the matter before the court for approximately one-half hour. The court informed counsel for the plaintiffs that it was incumbent upon him to prove the solvency of H. J. Meehan, but counsel for the plaintiffs argued otherwise, and challenged the correctness of the court's ruling. He had an opportunity then to prove the solvency of H. J. Meehan, who was seated beside him in the court room, but he refused."

No depositions were taken, nor was this responsive averment of the answer traversed in any way. After argument before the court, in banc and all members being present, a decree was entered discharging both rules; this appeal by plaintiffs was taken from that decree.

In the course of its opinion, the court below said: "Before the case was closed the trial judge asked the jury to retire in order to give counsel an opportunity to argue their respective points, and during that argument the court called attention of counsel for the claimants to the two cases that he relied upon to affirm the point for the defendant and stated that, as he viewed the law, he would have to direct a verdict for the defendant. It was also suggested by the court that Mr. Meehan, who gave the property in question to his daughters, was in court, and that he would know better than anyone else whether or not he was solvent at the time he transferred this property to his daughters."

In the absence of any evidence to the contrary upon

the record, we must accept this statement of the court below as conclusive.

Granting that the expression of the trial judge—"there is nothing before the court to show but what the party who delivered it [the bill of sale] had ample property at that time to cover all of his indebtedness"—might have given the counsel offering it in evidence the impression that the trial judge thought the burden was upon the objecting party [the defendant] to show its inadmissibility by proving the donor's insolvency, such impression must have been thoroughly removed by what the court says occurred, during the argument on the points, and before the verdict was directed.

It was so clearly the law, under the evidence as it stood when plaintiffs rested, that the gift was presumptively fraudulent, as against defendant, that their counsel could not have sustained a verdict in their favor on that evidence, even if the trial judge had affirmed their point. Defendant was clearly a "creditor" under the definition in the "Uniform Fraudulent Conveyance Act" of May 21, 1921, P. L. 1045, 39 PS §351. Under it, defendant had a right to disregard the transfer of the property and levy upon it, unless the fair, salable, value of the assets retained by the donor was sufficient to pay his debts, and the burden was upon plaintiffs to prove he had retained sufficient means to satisfy all his obligations: Woolston's Appeal, 51 Pa. 452; Chisolm v. Moore, 49 Pa. Superior Ct. 132, (a case involving a gift from parent to child and cited with approval in American Trust Co., v. Kaufman, 276 Pa. 35); Peoples Savings and Dime Bank, & T. Co., v. Scott, 303 Pa. 294; Butterworth v. Well, ibid., 302.

Whether the gift be between husband and wife or from parent to child, can afford no logical basis for a distinction in the application of the principle, and we find no such distinction in the authorities: 27 C. J. 565 §278, ibid., 572, §292.

In his brief, counsel for plaintiffs still questions whether it was incumbent on them to prove the solvency of their father. A paragraph from his brief reads: "Having established the gift, the burden then shifts to the other party to show that the transaction was not bona fide." But the cases cited in support of his contention are all cases in which no question of the rights of creditors was involved; the contests there were between the donors and donees, or their representatives, and arose out of efforts to reclaim the subject matter of the gifts.

Having closed their case without offering any evidence tending to prove the donor had means left with which to pay his debts, plaintiffs were not justified in asking for binding instructions, and, therefore, were not entitled to a judgment n.o.v.

Moreover, in considering the averment of counsel for plaintiffs, in support of his motion for a new trial, that he could and would have proved the donor's solvency if he had not been misled by the ruling, it is only proper to observe that, even if both the answer and statement of the court be disregarded, he was fully advised of the position taken by the trial judge when he heard the charge to the jury. If he had then moved that the case be reopened to afford him an opportunity to call witnesses to prove the donor's solvency, although not entitled thereto as a matter of right, the proper administration of justice would have warranted the granting of such motion, or, if it had been denied, he would now be in a much stronger position. No suggestion of having been misled was made until the supplemental reasons for a new trial were filed, more than three months after the trial; nor was any effort made, by taking depositions or otherwise, to support the averment in the petition of ability to prove solvency.

In our opinion, the absence of evidence for the plaintiffs that their donor had means left to pay his debts,

after the gift to them, was fatal to their case, and we are not convinced the court below abused its discretion in refusing to open the judgment.

Having reached this conclusion, it is not necessary to consider whether there was sufficient evidence of a change of possession.

The decree discharging plaintiffs' rules is affirmed.