# LUCILE NEUBAUER v. CONRAD J. CLOUTIER AND OTHERS.

122 N. W. (2d) 623.

June 14, 1963—No. 38,926.

*Benton & Weber,* for appellant.
*Murphy & Preece,* for respondents.

SHERAN, JUSTICE.

The appeal is by Lucile Neubauer, hereinafter called the creditor, from a judgment dismissing her cause of action against defendants Mildred R. Stasik and Emma Cloutier, hereinafter called the grantees, to have a deed by which certain real estate was conveyed to them declared fraudulent and void and the realty made subject to a lien for the enforcement of a judgment against defendant Conrad Cloutier, hereinafter called grantor.

The question for determination is whether the trial court correctly decided that the evidence introduced by the creditor was, as a matter of law, inadequate to establish fraud in a conveyance by a deed dated December 26, 1961, and recorded on the following day whereby grantor conveyed to his mother and his sister his interest in a building located in Grand Rapids, Minnesota.

The complaint served on or about January 19, 1962, is based on a promissory note executed by the grantor and delivered to the creditor on January 2, 1958. The facts of the above-mentioned conveyance are alleged. Judgment is prayed against the grantor for the amount due by the terms of the note and against the grantees that the conveyance be declared void and subject to a lien to enforce payment. By joint answer interposed on behalf of all of the defendants, the conveyance was admitted; all other allegations of the complaint were denied. When the case was called for trial on April 24, 1962, and after a jury had been selected, the paragraphs of the complaint with respect to the grantor's indebtedness to the creditor were admitted. After presentation of plaintiff's case, an agreement was reached which resulted in the entry of judgment in the creditor's favor against the grantor for $4,817.82, representing the unpaid principal of the note and interest thereon, together with an attorney's fee for its collection.

Liability on the note having been admitted, the issue remaining was whether the deed dated December 26, 1961, was fraudulent as to creditors. The only testimony introduced at trial was that presented by plaintiff[1] who, upon resting, was met with a motion made on behalf of the grantees that the jury be directed to return a verdict in their favor. The motion was granted. Plaintiff's motion for judgment notwithstanding the verdict or a new trial was thereafter denied and the judgment from which this appeal is taken was entered.

The evidence by which the decision of the trial court must be judged, construed in the light most favorable to the plaintiff, discloses the following essential facts:

(a) On December 8, 1961, a divorce decree in an action between the grantor and his former wife, entered May 19, 1960, was affirmed by this court. Cloutier v. Cloutier, 261 Minn. 324, 112 N. W. (2d) 347. By its terms, grantor was obligated to pay to his former wife alimony and attorneys' fees, and the interest of the parties in the realty involved was divided between them in equal shares.

(b) Eighteen days later the grantor quitclaimed his interest in this realty to his mother, Emma Cloutier, and his sister, Mildred R. Stasik.

(c) The deed in question was prepared at Grand Rapids, Minnesota, in the office of the attorneys who represented the defendants jointly in the present action. When it was filed and recorded on the following day, all three of the defendants went to the office of the county treasurer, where state revenue stamps were obtained, and to the office of the register of deeds, where the instrument was filed. There one was heard to say in the presence of the others, "Now let them file their liens."

(d) The quitclaim deed was filed without Federal revenue stamps but did carry state revenue stamps in the amount of $1.10. It was mailed by the register of deeds to Superior, Wisconsin, where the moth-

---

[1]Plaintiff called defendants for cross-examination under Rule 43.02, Rules of Civil Procedure. The rule that a party is not bound by the testimony of an adversary so cross-examined does not affect the probative value of such testimony where uncontradicted and unimpeached. Krafft v. Hirt, 260 Minn. 296, 110 N. W. (2d) 14.

er and sister then lived and where the grantor, a resident of Phoenix, Arizona, was temporarily visiting. Although there is some confusion on this point, it appears that the deed was in the possession of the grantor's sister at the time of the trial.

(e) Following the inception of the divorce proceedings between the grantor and his wife, which came up for trial in February 1960, the grantor's mother had taken care of his child. Both the mother and the sister had advanced money in an unspecified amount to the grantor over a period of years prior to December 26, 1961, and he was then indebted to them. The amount of the indebtedness at the time of trial was not explained although the testimony indicated that it was at least $1,700. There was no written evidence to support the existence of this claimed obligation. There is no testimony as to whether interest on the obligation had ever been requested or paid.

(f) The parties to the conveyance testified that the consideration for the transfer was the preexisting indebtedness, the amount of which, except as stated, was never specified.

(g) The grantor was indebted to the plaintiff at the time of the conveyance on account of the promissory note of January 2, 1958, no payment on it having been made subsequent to December 24, 1959. The note was secured by a second mortgage on fixtures and equipment used in a restaurant business, the purchase of which gave rise to the debt.[2] The amount of the first mortgage does not appear in the record. The value, if any, of the security afforded by the second mortgage is unknown.

(h) Although the note involved was not offered or received in evidence, admissions made by the attorneys for the grantor at the inception of the trial (April 24, 1962) constituted an acknowledgment that it

---

[2] A mortgagee is a "creditor" and a mortgagor a "debtor" within definitions of "creditor" and "debt" under the Uniform Fraudulent Conveyance Act as respects a mortgagee's right to set aside as fraudulent conveyances of property not included in the mortgage. Marshall & Ilsley Bank v. Stepke, 228 Wis. 39, 279 N. W. 625, 116 A. L. R. 1042. See, also, Gregory v. Jacobs, 56 N. Y. S. (2d) 574, affirmed, 269 App. Div. 921, 57 N. Y. S. (2d) 538, appeal denied, 269 App. Div. 1006, 59 N. Y. S. (2d) 384, appeal dismissed, 295 N. Y. 688, 65 N. E. (2d) 330.

was delinquent as of that date. Whether it was delinquent on December 26, 1961, when the conveyance involved was made, cannot be determined either from the record or from an examination of the chattel mortgage attached to the complaint.[3]

(i)   As of December 26, 1961, the grantor's interest in the realty involved was subject to a lien to secure payment of fees he owed the attorney who had represented him in the divorce proceedings. By the terms of the divorce decree his wife had been granted a lien to secure a debt grantor owed her also, although the record does not establish whether that debt was still a lien at the time of the conveyance. He had additional debts, the amount and character of which does not appear in the evidence.

(j)   There was no evidence as to the value of the grantor's interest in the realty involved as of December 26, 1961. In the course of the divorce proceedings in February 1960 the grantor expressed the opinion that the realty was worth $75,000. Under cross-examination in this action he stated that it had been appraised at $50,000. However, the record is barren of evidence as to whether at the time the opinion was expressed the realty so valued was encumbered or subject to liens and there is nothing in the record showing the relationship, if any, between the opinion expressed as to the value of the realty in February 1960 and the value of the grantor's interest therein on December 26, 1961.

■   Minn. St. 513.23 provides:

---

[3]The fact that the note was delinquent on December 26, 1961, does not appear specifically from the evidence. The grantor, at trial, admitted "that part of the complaint wherein a cause of action is alleged on a promissory note and chattel mortgage to the amount of the chattel mortgage and note as alleged * * *." Delinquency on December 26, 1961, is not alleged. The chattel mortgage, a copy of which is attached to the complaint, is on a standard form and describes the note secured as follows:
"Note for $4,206.47 dated January 2, 1958, due in — installments of $— each with interest at 6% included in payments, per cent per annum until paid, the first installment to be paid on the —day of—, 19—, and a like and equal sum on the — day of each succeeding — thereafter until —, 19—, when the balance remaining unpaid shall become due and payable."

"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

The fact that a conveyance was made and that plaintiff was then a creditor having been conceded, the burden of proof remains on the plaintiff[4] to show (a) that on December 26, 1961, defendant grantor was insolvent either at the time he made the conveyance here involved or as a result of it, and (b) that defendant grantor did not receive fair consideration in exchange.

■ A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liabilities on his existing debts as they become absolute and mature.[5] There is no evidence whatever in the record from which the fair salable value of the grantor's assets on December 26, 1961, can be determined, and evidence as to the amount of his debts over and above his obligation to plaintiff was never developed. While it has been held in some

---

[4]A creditor who assails a conveyance of his debtor for fraud must show it. McMillan v. Edfast, 50 Minn. 414, 52 N. W. 907. Ordinarily the burden is on the creditor to show the fraudulent character of the conveyance which he attacks. United Norwegian Church v. Csaszar, 141 Minn. 459, 170 N. W. 694. Where a son conveys realty to his mother, no presumption of fraud arises from the relationship of the parties. Nichols & Shepard Co. v. Gerlich, 84 Minn. 483, 87 N. W. 1120. "Transfers between husband and wife are presumptively fraudulent as to existing creditors. * * * They are not so considered between parent and child, although scrutinized." Larson v. Tweten, 185 Minn. 370, 373, 241 N. W. 45, 46. See, also, Klaseus v. Meester, 173 Minn. 468, 217 N. W. 593. A different rule may apply if it is established that the conveyance was "voluntary," i. e., without consideration. Murphy v. Casey, 157 Minn. 1, 195 N. W. 627; Lind v. O. N. Johnson Co. 204 Minn. 30, 282 N. W. 661, 119 A. L. R. 940. In the instant case there was consideration for the conveyance and no proof that the amount was disproportionate.

[5]Minn. St. 513.21(1) provides: "A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."

jurisdictions that proof of the delinquency of the debtor's obligation to the creditor at the time of the contested transfer makes a prima facie showing of insolvency, the rule is otherwise where the only proof is that of an existing debt without evidence of default as of the date the transfer is made. There is insufficient evidence, therefore, either to sustain the burden of proving insolvency or to raise a presumption which would support an affirmative finding in the absence of direct evidence on the point.

■ Apart from the defect of proof on the question of insolvency, there is no evidence that the quitclaim deed was executed and delivered "without a fair consideration." "Fair consideration" is given for property when in exchange for such property, as a fair equivalent therefor, and in good faith, an antecedent debt is satisfied.[6] To determine whether the antecedent debt satisfied by the conveyance was fairly equivalent in value to the interest quitclaimed we must know, first, the market value of the interest conveyed at the time of the transfer and, secondly, the amount of the antecedent debt thereby satisfied. On the record before us we have no way of determining what the value of the grantor's interest on the crucial date might have been. The rule that has been adopted in some jurisdictions to the effect that the revenue stamps affixed to deeds establish prima facie the amount of the consideration paid[7] would, in the absence of any other evidence, support a finding that the grantor received consideration in an amount of less than $1,000.[8] This

---

[6]Minn. St. 513.22 provides: "Fair consideration is given for property, or obligation,

"(1) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

"(2) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained."

[7]See, Flynn v. Palmer, 270 Wis. 43, 70 N. W. (2d) 231, 51 A. L. R. (2d) 1000; Matter of McGeehin, 134 Misc. 334, 235 N. Y. S. 477.

[8]26 USCA, § 4361, reads as follows: "There shall be imposed a tax on each deed, instrument, or writing (unless deposited in escrow before April 1, 1932), whereby any lands, tenements, or other realty sold shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the

presumption continued only so long as there was no direct evidence on the point and dissolved upon proof that the antecedent debt satisfied was in the amount at least $1,700.[9] Whether the consideration was approximately $1,000 or $1,700 or some amount in excess of $1,700 is of no aid to us where we lack competent evidence of the value of the interest quitclaimed against which to compare the consideration received.

■ There was no direct evidence in the case of actual intent to hinder, delay, or defraud creditors.[10] The defendant grantees testified that they did not know of the existence of the indebtedness to plaintiff at the time of the transfer. The answers of the defendant grantor suggest, if anything, an impression on his part that the security afforded by the second mortgage was protection for the plaintiff. Although the statement "Now let them file their liens" was made at the time that the deed was recorded, it can be assumed, and plaintiff in her brief suggests, that this statement was made with reference to the lien for attorney's fees filed

---

purchaser or purchasers, or any other person or persons, by his, her, or their direction, when the consideration or value of the interest or property conveyed, exclusive of the value of any lien or encumbrance remaining thereon at the time of sale, exceeds $100 and does not exceed $500, in the amount of 55 cents; and at the rate of 55 cents for each additional $500 or fractional part thereof."

Minn. St. 287.21 reads as follows: "There is hereby imposed on each deed, instrument, or writing by which any lands, tenements, or other realty in this state shall be granted, assigned, transferred, or otherwise conveyed, a tax determined in the following manner. When there is no consideration or when the consideration, exclusive of the value of any lien or encumbrance remaining thereon at the time of sale, is $1,000 or less, the tax shall be $1.10. When the consideration, exclusive of the value of any lien or encumbrance remaining thereon at the time of sale, exceeds $1,000, the tax shall be $1.10 plus 55 cents for each $500 or fractional part of $500 in excess of $1,000."

[9]Suske v. Straka, 229 Minn. 408, 39 N. W. (2d) 745; Shell Oil Co. v. Kapler, 235 Minn. 292, 50 N. W. (2d) 707; Kath v. Kath, 238 Minn. 120, 55 N. W. (2d) 691.

[10]Minn. St. 513.26 reads as follows: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

against the property by the attorney who had represented the grantor in the divorce proceedings. Plaintiff had no lien on the real estate at the time. Action on the note was not commenced until the following month. The intent to which reference is made in Minn. St. 513.26 must exist at the time that the transfer was made. Underleak v. Scott, 117 Minn. 136, 134 N. W. 731. To void the transfer, as in fraud of creditors, it is necessary in a case where the conveyance is not voluntary to show fraudulent intent of both debtor-grantor and creditor-grantee. Petersdorf v. Malz, 136 Minn. 374, 162 N. W. 474; Watson v. Goldstein, 174 Minn. 423, 219 N. W. 550. The fact that the grantor may have intended to give a preference to the debt owed his mother and sister is not evidence of an intent to hinder, delay, and defraud creditors within the meaning of § 513.26. Skinner v. Overend, 190 Minn. 456, 252 N. W. 418. A conveyance is not "voluntary" if made in exchange for a valuable or fair consideration. Kohrt v. Mercer, 203 Minn. 494, 282 N. W. 129.

■ Plaintiff contends that a finding of fraud on creditors could be based on the circumstance that the conveyance was made by a man, recently divorced, to his mother and sister. This relationship could not support a finding that the grantor was insolvent on December 26, 1961. It does not raise a presumption that the conveyance was "voluntary," i. e., without consideration, or that it was made "with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud * * * creditors" within the meaning of § 513.26.[11] Where, as here, the uncontradicted evidence shows that consideration was in fact paid to the grantor by the grantees in the form of extinguishment of a preexisting debt, and there is a complete absence of evidence indicating a disparity between the consideration transferred and the value of the property received, the necessity which permits application of presumptions does not come into play.[12]

■ The weakness of the plaintiff's proof in this case was probably due to the fact that she was taken by surprise when the defendant grantor, who had denied the indebtedness in his answer, admitted the debt after the jury had been selected, putting plaintiff in a position where it

[11] See footnote 4, *supra.*
[12] See footnote 9, *supra.*

was necessary for her to proceed at once with such proof as she had available on the issue of fraud. In the court below, we note that plaintiff professed to have been deprived of the testimony of one possible witness because of this development. There is a suggestion—but no evidence— that the note involved was in fact delinquent on December 26, 1961, and, if this had been proved, a prima facie case of insolvency would have been established.[13] Interrogatories to the defendants could have fixed precisely the amount of the consideration claimed and the basis of it. Testimony as to the value of this building on the date of the transfer must be readily available. Liens and encumbrances are a matter of public record. There may be a reason why the essential evidence, so readily obtainable, was not presented to the trial court. Disposition of the rights of a creditor on a record which hints at but does not prove the essential elements of the plaintiff's case is not satisfactory. We are limited to the evidence before us. The same restriction confronted the trial court. Whether relief is possible under Rule 60.02, Rules of Civil Procedure, is a matter to be addressed to its discretion. Our decision of the case is without prejudice to application for such relief and without suggestion that, upon application, relief should or should not be granted.

Affirmed.

---

[13]Meehan v. Shreveport-Eldorado Pipe Line Co. 107 Pa. Super. 580, 164 A. 364; Glanzberg v. Goldston, 28 Misc. (2d) 742, 213 N. Y. S. (2d) 518. Some courts construing § 4 of the Uniform Fraudulent Conveyance Act (Minn. St. 513.23) have held that the debtor need not be in default, but where there is a showing that he is heavily in debt the burden of going forward with the evidence is on the grantor or the grantee to show solvency at the time of the conveyance. See, Farmers Trust Co. v. Bevis, 331 Pa. 89, 200 A. 54; Fidelity Trust Co. v. Union Nat. Bank, 313 Pa. 467, 169 A. 209; Wilson v. Robinson (2 Cir.) 83 F. (2d) 397; Castellano v. Osborne (2 Cir.) 16 F. (2d) 187; Ferguson v. Jack, 339 Pa. 166, 14 A. (2d) 74; Queen-Favorite Bldg. & Loan Assn. v. Burstein, 310 Pa. 219, 165 A. 13. The burden rests upon the creditor, however, where the grantor or transferror is not in default. Dunham v. Cades, 115 N. J. Eq. 290, 170 A. 656; Franklin Nat. Bank v. Freile, 116 N. J. Eq. 278, 173 A. 93, affirmed, 117 N. J. Eq. 405, 176 A. 167; Superior Finance Corp. v. Santucci, 115 N. J. Eq. 504, 171 A. 551; Camden Securities Co. v. Nurock, 112 N. J. Eq. 92, 163 A. 547; Conway v. Raphel, 102 N. J. Eq. 531, 141 A. 804; Smith v. Poppen, 57 S. D. 25, 230 N. W. 229.