The **FIRST NATIONAL BANK OF SAINT PAUL, Appellant,**

v.

**SHALLERN CORPORATION, Respondent,**

**R. Bruce Lindvall, Defendant.**

No. 51218.

Supreme Court of Minnesota.

Aug. 21, 1981.

Briggs & Morgan, Richard G. Mark and Michael H. Streater, St. Paul, for appellant.

McGovern, Opperman & Paquin and James F. McGovern, Minneapolis, for respondent.

SIMONETT, Justice.

In this dispute between two creditors, a bank and a corporation, over rights to an insolvent debtor's property, the district court granted partial summary judgment in favor of the defendant corporation creditor. Plaintiff bank appeals. We reverse. To understand the issue on appeal—whether partial summary judgment was proper—it is necessary to give the procedural history of the case.

Defendant debtor R. Bruce Lindvall personally owned property improved as a manufacturing plant in St. Paul. As of September 1978, the property was subject to a first mortgage, Lindvall to Summit State Bank of Bloomington in the amount of $50,-000; a second mortgage, Lindvall to plaintiff The First National Bank of Saint Paul in the amount of $95,000; and mechanics liens of some $22,000.

On February 12, 1979, Lindvall delivered his quitclaim deed, which is the subject of this lawsuit, conveying the St. Paul plant property to defendant Shallern Corporation.

On June 21, 1979, the St. Paul bank foreclosed its mortgage and on July 11 following the Bloomington bank foreclosed its mortgage. Shallern redeemed from both mortgage foreclosures, from the first foreclosure as owner under the deed and from the second foreclosure as equitable mortgagee (the district court by then having ruled Shallern was such a mortgagee). Shallern is now in possession. The St. Paul bank accepted Shallern's redemption from its

mortgage under an agreement reserving its right to challenge Shallern's ownership.

The St. Paul bank also foreclosed its security interest on some loans to a separate corporation of Lindvall's, which Lindvall had personally guaranteed, obtaining a deficiency judgment against Lindvall of about $48,000. So, in October 1979, the St. Paul bank commenced this lawsuit against Shallern and Lindvall. In its complaint the bank alleged as first and second claims for relief that the Lindvall quitclaim deed was a fraudulent conveyance, and, as a third claim for relief, "in the alternative," that the deed was really an equitable mortgage. The bank asked that the deed be set aside, or alternatively, that Shallern's interest in the property be adjudged an equitable mortgagee's interest in an amount to be determined and that the bank's deficiency judgment of $48,000 be declared a lien on the property.

Shallern's answer admitted "that Lindvall conveyed all of his right, title and interest in the property to Shallern by a Quit Claim Deed" and alleged the property had been conveyed for a fair consideration. Shallern asserted no counterclaim.

Thereafter Shallern moved for partial summary judgment declaring its interest in the property was an equitable mortgagee's interest securing $444,000. In a supporting affidavit, after explaining Lindvall's indebtedness to it, Shallern's director stated the Lindvall deed had been intended by the parties to be only security for the indebtedness, the property to be reconveyed to Lindvall upon payment of the debt. The St. Paul bank countered with its own motion for summary judgment.

In January 1980, the district court granted Shallern's motion. It declared Shallern's interest to be that of an equitable mortgagee, dismissed that part of the St. Paul bank's complaint seeking to set aside the deed as a fraudulent conveyance, and provided that the amount of Shallern's equitable mortgage would be determined later. The bank's motion for summary judgment was, "in all respects," denied. The trial court also ordered judgment to be entered pursuant to Minn.R.Civ.P. 54.02, thus providing the finality to make the partial summary judgment appealable.

We have to decide: Did the trial court err in summarily ruling, in accordance with plaintiff bank's alternative claim and defendant Shallern's motion, that Shallern was an equitable mortgagee?

What complicates this case is its procedural posture. If the bank had sued only to establish an equitable mortgage and the defendant had then admitted this is exactly what the quitclaim deed was, summary judgment, of course, would be proper. But that is not the case. Here the bank, pursuant to Minn.R.Civ.P. 8.05, alleged, as it might, two alternative and perhaps inconsistent claims as to why Shallern, even though the grantee under an ostensibly absolute deed, was not the owner. The bank's first claim was that the Lindvall deed was fraudulent and should be set aside; only alternatively did it allege an equitable mortgage. These two theories do not appear to be equally advantageous to the bank. If the deed is set aside, the bank's deficiency judgment comes first for payment; if the deed is determined to be a mortgage, the bank comes in second to reach whatever interest remains after Shallern's equitable mortgage is satisfied.

Presumably aware of this difference, Shallern admitted the deed was an equitable mortgage and moved for a ratifying summary judgment, which was granted. The trial court did not explain why it also dismissed plaintiff's fraudulent conveyance claim. If it did so on the grounds that there were no genuine issues of material fact and as a matter of law the quitclaim deed was not a fraudulent conveyance, such a ruling would be in error. There are obvious fact issues. Was the deed given by Lindvall, "with the actual intent * * * to hinder, delay, or defraud present or future creditors * * * "? Minn.Stat. § 513.26 (1980). Or was the deed "by a person who is or will be thereby rendered insolvent * * without a fair consideration"? Minn.Stat. § 513.23 (1980). The bank says it believed there was a factual dispute as to Lindvall's

intent and so did not argue to the trial court that it was entitled to summary judgment under section 513.26,[1] only under section 513.23. But even under the latter section, the issue of fair consideration is very much in dispute.[2]

The only other grounds for dismissing the fraudulent conveyance claim would be that if the bank alleges either fraudulent conveyance or equitable mortgage and the defendant admits the latter, then judgment should be entered in favor of the bank on the equitable mortgage and against it on the fraudulent conveyance. This reasoning assumes the two theories of recovery are inconsistent. But even if they are—and of this we are not so sure—the result is that the defendant by admitting to the claim most favorable to it denies plaintiff's litigating what it believes is its most favorable claim. Nothing in Rule 8.05, which permits assertion of all claims a party has "regardless of consistency," ordains such a result. On the other hand, Minn.R.Civ.P. 56, governing summary judgments, permits a claimant to move for judgment in his favor on all or any part of his claim and permits a defendant to move for judgment in his favor on all or any part of a claim asserted

against him. If Shallern had moved first for dismissal of plaintiff's fraudulent conveyance claim, it would have been an appropriate summary judgment motion. But instead Shallern limited its motion to plaintiff's alternative claim, and this motion favored Shallern only in the sense it precluded plaintiff's more favorable claim. Under the circumstances here, we do not believe Shallern's motion was appropriate under Rule 56.

■ But even if summary disposition of the equitable mortgage were to be considered as properly before the court, we do not think the rule should be that a defendant by admitting one claim can nullify others. By alleging alternative claims a claimant does no more than allege one of several claims to be presented in the order of priority assigned by the claimant is appropriate depending on the proof to be developed. A defendant may not by admitting to one of the alternatives make plaintiff's election for him.

The approach adopted here better serves the search for truth. Only because Shallern has admitted plaintiff's alternative claim are the facts to establish an equitable mort-

---

1. Shallern cites *Neubauer v. Cloutier*, 265 Minn. 539, 122 N.W.2d 623 (1963), that plaintiff must allege and prove fraudulent intent on the part of the grantee as well as the grantor where there has been fair consideration for the transfer. Plaintiff's complaint does not mention Shallern's intent, but it is clear plaintiff was challenging the Lindvall deed under all sections of the Uniform Fraudulent Conveyance Act, Minn.Stat. §§ 513.20–.32 (1980). Evidence of fraudulent intent is nearly always circumstantial. Here Lindvall was a shareholder of Shallern and there was evidence Shallern knew of Lindvall's precarious financial condition when it accepted its deed. Indeed, Lindvall gave Shallern his deed only 7 days after the bank called due certain delinquent loans to another corporation of Lindvall's, which Lindvall had personally guaranteed. This as well as other evidence would preclude summary judgment for either plaintiff or defendant.

2. Depending on whose appraisal is believed, the property is worth $325,000 to $720,000. The bank claims Lindvall deeded this property to Shallern for only $8,800. Shallern says it had equipment rental leases with two of Lindvall's corporations, the rentals secured by security interests plus Lindvall's personal guaran-

ty; that the leases being some 2 to 4 months in default, Shallern had accelerated the entire balance due creating an "antecedent debt" of $340,000; that this sum plus the $8,800 loaned Lindvall at the time the deed was given (a "present advance"), plus other payments to protect the property totaled some $440,000, plainly fair consideration for the deed. Shallern argues this is not a fraudulent conveyance case and nothing more than a debtor preferring one creditor over another, which is permissible.

The bank points out Shallern's analysis is not based on undisputed facts: First, it is strenuously disputed the deed was intended to be only security, even though an option back to Lindvall, apparently unsigned, was prepared subsequent to the deed; second, it is unclear Lindvall was personally obligated under all the leases, since he apparently signed some only in his corporate capacity; and, third, it is disputed if Shallern acted in good faith. Moreover, since Shallern got the leased equipment back, its net loss is yet to be determined.

The evidence on good faith and fair consideration is conflicting and the issues cannot be decided as a matter of law.

gage deemed proven. By making such an admission at this stage of the litigation, Shallern should not be able to compel the trial court to so find, particularly where plaintiff does not agree and the admission is suspect. If Shallern had defended against the fraudulent conveyance claim by arguing for an equitable mortgage, clearly summary judgment would not lie. Only after it moved for summary judgment did Shallern switch its position that the deed was not absolute but really a mortgage. Nor has Lindvall been heard from yet. These circumstances require a trial on the issue of an equitable mortgage.

If a plaintiff moves successfully for summary judgment on one of his alternative claims, he may well then waive his other claims. The St. Paul bank's motion for summary judgment was not specific, simply asking generally for summary judgment. It is evident from the record, however, the bank limited its motion only to its claim that the deed was a fraudulent conveyance under Minn.Stat. § 513.23 (1980).

Finally, it is not clear claims for fraudulent conveyance and equitable mortgage are completely inconsistent. By declaring the Lindvall deed to be an equitable mortgage, there is necessarily a finding the parties to the deed intended a security transaction and the bank is no longer free to prove they intended an absolute conveyance. Even so, the bank might still be entitled to prove the equitable mortgage to be a fraudulent conveyance by showing bad faith or that the property was secured for a "disproportionately small" debt. While Shallern says to so apply the statute would not further the purpose of bringing property back within the reach of creditors, since this is already accomplished by declaring the deed to be an equitable mortgage, there is authority for treating equitable mortgages as fraudulent conveyances because, being an absolute deed on their face, they tend to conceal assets. G. Osborne, Handbook on the Law of Mortgages, § 81 (1970). And, of course, if the equitable mortgage was given and received with actual fraudulent intent, the statute would set it aside. These issues warrant exploration at a trial.

We reverse and remand for trial on all issues.

Reversed.

OTIS, J., took no part in the consideration or decision of this case.