F. James MURRAY, et al., Appellants,

v.

Charles G. ATWOOD, et al.,
Respondents.

No. C7–86–1918.

Court of Appeals of Minnesota.

May 5, 1987.

Review Denied June 30, 1987.

Jerome S. Rice, Kari E. Nelson, Jerome S. Rice Law Offices, P.A., Minneapolis, for appellants.

Kelton Gage, Blethen, Gage & Krause, Mankato, for respondents.

Considered and decided by LESLIE, P.J., and SEDGWICK and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

The trial court found that appellants, James Murray and Frank Gazzola, did not prove that respondents, Charles Atwood and George Smith, fraudulently or preferentially conveyed corporate assets to themselves. Appellants now claim that: the trial court erred when it found Atwood-Smith Realty (ASR) was solvent at the time its assets were transferred to respondents; the trial court erred in determining appellants were not creditors at the time of the conveyances and the trial court erred in

finding respondents had no actual intent to defraud appellants. We affirm.

## FACTS

During the summer of 1978, respondents and appellants entered into a contract for deed in which respondents, acting for ASR, agreed to purchase 32 lots that were part of a real estate development owned by appellants. The contract provided that ASR would pay $15,600 in cash plus $18,000 to be paid monthly. In addition, ASR was to assume a mortgage on the property held by the National Bank of Commerce (NBC) for $160,000. Appellants had both personally guaranteed the repayment of this debt.

At the end of 1980, respondents decided to liquidate Atwood-Smith Realty and entered into a written liquidation agreement on February 26, 1981. The agreement recognized that during the operation of the corporation respondents had taken their profits in the form of promissory notes and therefore certain assets were distributed to each respondent in satisfaction of these debts. After distribution of these assets, the major asset held by ASR was the 31 lots purchased from appellants. (One lot had been sold prior to the liquidation.)

Respondents were unable to renegotiate the financing on the lots, and ASR defaulted on the final payment that was due on March 11, 1981. Consequently, NBC instituted foreclosure proceedings. Both respondents testified that they believed ASR had not assumed the mortgage, and upon its failure to pay, the land would go back to appellants or NBC. However, in the foreclosure action, the trial court found that ASR had assumed the mortgage.

At the foreclosure sale, NBC bought the 31 lots for $62,000 and a deficiency judgment was entered against ASR and appellants for $116,307.57. Appellants redeemed the property and paid the deficiency judgment. They then brought an action against respondents to recover the amounts they had paid.

At trial, both parties presented evidence about the fair salable value of the 31 lots. Appellant Murray testified that before No-

vember 14, 1984, he had not listed the lots with a realtor but had indicated to some realtors that he would sell the lots for $6,000 to $7,500 per lot. Between 1974 and 1978 Murray said he sold 19 lots for between $6,000 to $7,500 and the remaining 32 lots were sold to respondents for $6,050 per lot. In answers to interrogatories Murray stated that as of January 1, 1981, the lots were worth $5,050 each. At trial Murray indicated that his more recent efforts to quickly sell the lots would mean accepting a much lower price. A real estate appraiser testified for respondents and valued the lots as of late 1980 and early 1981 at $6,000 each for a total development value of $186,000.

Respondents also introduced several expert witnesses to give valuations of the corporate assets conveyed to respondents during the liquidation. Appellants offered no evidence to contradict these valuations.

The trial court found that Minn.Stat. § 513.23 did not apply because the transfers had been for fair consideration. Further, the trial court determined that the lots had a fair salable value on December 31, 1980, of between $170,500 and $186,000, meaning ASR was solvent because the outstanding liability on the lots at this time had been reduced to $145,000. The trial court also questioned whether appellants could even be considered creditors. Finally, the trial court indicated that respondents' misunderstanding as to their liability on the assumption of the mortgage did not rise to the level of actual fraud.

## ISSUES

1. Did the trial court err in concluding respondents had not violated Minn.Stat. § 513.23?

2. Did the trial court err in finding respondents were not liable for preferential transfers because ASR was solvent at the time of the transfers?

3. Did the trial court err in finding there had been no actual fraud on the part of respondents when conveying the corporate assets?

## ANALYSIS

### I.

Appellants argue that the transfers of ASR's assets to respondents should be set aside as presumptively fraudulent under Minn.Stat. § 513.23 (1980). That section provides:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

In order to invoke this presumption, a plaintiff must show the existence of all the circumstances enumerated in the statute. *Neubauer v. Cloutier*, 265 Minn. 539, 544, 122 N.W.2d 623, 628 (1963). The trial court in the present case found that appellants had failed to show that the conveyances were without fair consideration and that respondents were insolvent and also questioned whether appellants could be considered creditors under the statute.

Although appellants contend that the trial court erred in finding ASR was solvent and that appellants were not creditors, they do not challenge the trial court's finding that the transfers were made for fair consideration. Our review of the record shows that there was sufficient evidence to support the trial court's finding that the transfers were made for fair consideration. Appellants' failure to prove this element negates any presumption of a fraudulent conveyance under Minn.Stat. § 513.23.

### II.

The second theory of recovery asserted by appellants is that the transfers from ASR to respondents constituted preferential transfers. In *Snyder Electric Co. v. Fleming*, 305 N.W.2d 863 (Minn.1981), the supreme court explained this cause of action as follows:

> Directors and officers may make loans to their corporations and they may use the same methods as other creditors to collect bona fide corporate debts owed to them, but only so long as the corporation

is solvent. When a corporation is insolvent, or on the verge of insolvency, its directors and officers become fiduciaries of the corporate assets for the benefit of creditors. As fiduciaries, they cannot by reason of their special position treat themselves to a preference over other creditors. By "preference" we here mean generally a transfer or encumbrance of corporate assets made while the corporation is insolvent or verges on insolvency, the effect of which is to enable the director or officer to recover a greater percentage of his debt than general creditors of the corporation with otherwise similarly secured interests.

*Id.* at 869 (citations omitted).

Appellants cite two reasons for reversal of the trial court's finding of ASR's solvency. First, they argue that the trial court erred in receiving evidence about the fair salable value of the lots because the value of the lots had already been determined in the earlier foreclosure action and therefore respondents were collaterally estopped from relitigating this issue.

■ Collateral estoppel may be applied where:

(1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Kaiser v. Northern States Power Co.*, 353 N.W.2d 899, 902 (Minn.1984). The earlier foreclosure action brought by National Bank of Commerce determined only the amount owing on the loan and who was responsible for that debt. A determination of the fair market value of the lots was not essential to the foreclosure judgment. In fact, no such finding was made. Also, asset values for purposes of determining insolvency are usually measured at the time of the allegedly fraudulent conveyances. *Kessel v. Kessel*, 370 N.W.2d 889, 895 (Minn.Ct.App.1985). The foreclosure sale was not held until January, 1983, two years after the conveyances at issue. Under these circumstances collateral estoppel was not applicable.

Appellants also argue that the trial court's finding of solvency was erroneous because it measured the values as of December, 1980, when respondents initially agreed to liquidate ASR instead of when the assets were formally transferred. The trial court's finding of solvency was based solely on the fact that the fair market value of the 31 lots was greater than the outstanding liability on those lots, without reference to any other assets ASR may have retained.

Minn.Stat. § 513.21 (1980) defines insolvency as follows:

A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured.

The issue of solvency is a question of fact. *Kessel*, 370 N.W.2d at 893. As in other matters, the trial court's finding of solvency should not be set aside unless clearly erroneous. Minn.R.Civ.P. 52.01.

■ Except for their collateral estoppel argument, appellants do not challenge the trial court's valuation of the 31 lots. Appellants do not assert any facts to show that the value of the lots declined significantly between December, 1980, and March, 1981, when the transfers were essentially completed. Without such a showing of prejudice, we will not reverse the trial court on its finding that ASR was solvent. Therefore, appellants' claim of preferential transfers cannot be maintained.

### III.

Finally appellants challenge the trial court's finding that respondents did not have any actual intent to defraud appellants when ASR conveyed the assets. Minn.Stat. § 513.26 (1980) provides:

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

The trial court noted in its accompanying memorandum:

> [Appellants] also rely on 513.26 claiming actual fraud. [Respondents] have clearly shown that they believed, and they had good reason to so believe, that they had fully provided for the payment of the mortgage debt because the 31 lots remaining were more than sufficient to pay the debt in full. Furthermore, [respondents] have always maintained that they did not understand that the corporation had "assumed" the mortgage debt but had only taken the lands subject to the debt. * * * [S]uch mistakes or misunderstandings do not cause fraudulent intent.

■ Appellants argue that respondents were collaterally estopped from arguing this issue because the prior foreclosure action determined that they had assumed the mortgage. Once again we must conclude that the facts of this case do not warrant application of the doctrine of collateral estoppel. In the foreclosure action the trial court only construed the contract for deed. The question of respondents' intent or the existence of fraud on the part of respondents was neither raised, considered, nor decided by that court.

■ This court gives due deference to a trial court's opportunity to judge the credibility of the witnesses. In the present case the record shows that there was testimony which, if believed, would support a finding of no actual intent to defraud. Under these circumstances, we cannot say that the trial court was clearly erroneous in concluding there was no actual intent to defraud.

### DECISION

Appellants have failed to show that respondents' transfer of corporate assets constituted fraudulent or preferential conveyances.

Affirmed.