*In re* GOTTFRIED SCHMIDT'S ESTATE.

Argued January 10, 1894. Affirmed Jan. 19, 1894.

No. 8510.

**Gift by a wife to her husband.**

Evidence *held* sufficient to justify the jury in finding that a wife intended to make a gift to her husband of certain rents of her real estate, which she permitted him to collect and use.

Appeal by claimant, Anna Maria Schmidt, from an order of the District Court of Dakota County, *F. M. Crosby*, J., made September 2, 1893, denying her motion for a new trial.

Gottfried Schmidt died testate March 26, 1890. His will was contested,—*Schmidt* v. *Schmidt*, 47 Minn. 451,—but was sustained, and his estate was administered in the Probate Court of Dakota County. His widow, Anna Maria Schmidt, presented in that court her claim against the estate for $2,820. It was disallowed and she appealed to the District Court. Pleadings were there framed pursuant to Laws 1889, ch. 46, § 260, and the issues were tried June 5, 1893, before a jury who returned a verdict affirming the disallowance. She moved for a new trial but was denied, and from that order she appeals to this court.

She inherited some money in 1872 and with it bought a vacant lot, No. 506 Pine Street, St. Paul, and took the deed in her own name. A few years thereafter her husband, with her knowledge and consent, built a house on the lot at an expense of about $3,500. He rented the property to Gustav Borup in 1880 at $45 a month and received the rent monthly thereafter until his death. He paid the taxes, insurance and repairs out of the money and used the balance in the support of his family. The widow now claims that these rents belonged to her and asks that the executor account and pay to her the balance, after deducting the expense of repairs, taxes and insurance.

*John A. Larimore*, for appellant, cited 1878 G. S. ch. 69, §§ 1, 2, 4; *Spencer* v. *St. Paul & S. C. R. Co.*, 22 Minn. 29; *Ladd* v. *Newell*, 34 Minn. 107; *Williams* v. *McGrade*, 13 Minn. 46; *Laib* v. *Branden-*

*burg,* 34 Minn. 367; *Chadbourn* v. *Williams,* 45 Minn. 294; *Patten* v. *Patten,* 75 Ill. 446; *Voorhees* v. *Bonesteel,* 16 Wall. 16; *Owen* v. *Cawley,* 36 N. Y. 600; *Wells* v. *Smith,* 54 Ga. 262; *Buckley* v. *Wells,* 33 N. Y. 518; *Aldridge* v. *Muirhead,* 101 U. S. 397; *Hanson* v. *Millett,* 55 Me. 184.

*Stringer & Seymour* and *Hodgson & Schaller,* for respondent, cited *In re Hauer's Estate,* 140 Pa. St. 420; *Jones* v. *Davenport,* 44 N. J. Eq. 33; *Horner* v. *Webster,* 33 N. J. Law, 387; *Black* v. *Black,* 30 N. J. Eq. 215; *Smith* v. *Smith,* 125 N. Y. 224; *McNally* v. *Weld,* 30 Minn. 209.

MITCHELL, J. This matter came up to the District Court on appeal from an order of the Probate Court disallowing appellant's claim against the estate of her deceased husband for rents of her real estate collected by him in his lifetime. On the trial in the District Court the evidence showed, substantially, the following state of facts: The appellant and the deceased were married in 1853, and lived together as husband and wife until his death, in 1890. About 18 years before his death, the husband bought a lot for $500, (taking the title in his wife's name,) and afterwards erected a house on it, at a cost of about $3,500. The house was built by the husband out of his own funds and the common earnings of himself and wife, but the evidence tends to prove that the purchase price of the lot was paid for with the wife's money. In law, however, the house and lot were the property of the wife, and it is immaterial whose funds paid for them, except so far as it may tend to characterize the subsequent conduct of the parties with reference to the rents.

From the completion of the house to the day of his death, the husband, with the knowledge and consent of the wife, collected the rents, and used the money as his own, for family expenses, and in his business. He always paid the taxes and insurance on the property. No account of these rents was ever kept between the husband and wife, and she never made any demand for any such account. The wife never made any objection to her husband's using the money as his own, and she virtually admits that she never made any demand on him for its repayment. Whenever she wanted any money, he gave it to her, but there is nothing to show that this was on account

of the rents.   On the contrary, the inference from the evidence is irresistible that the money was given to her without reference to the rents, just as any husband would give money to his wife when she wanted it.

The evidence was also ample to warrant the jury in finding that the first time the wife ever asserted any right to these rents was after her husband's death.

The case was tried and submitted to the jury upon the theory that the sole issue was whether the appellant made a gift of the rents to her husband.

The court, in its charge,—to which there was no exception,—instructed the jury that, the property being the wife's, the rents were hers, and that she would be entitled to recover, unless it appeared that she intended to make a gift of them to her husband; that such intention must affirmatively appear,—otherwise, she was entitled to recover; that this fact had to be determined from all the evidence in the case; and, quoting from the decision of the court in *McNally* v. *Weld*, 30 Minn. 209, (14 N. W. 895,) said:  "If she permitted her husband to receive the rents, and use them for family expenses or in his business, or otherwise, under circumstances clearly inconsistent with an intention to claim a repayment, she cannot recover of his estate."

The jury found a verdict for the estate, and in our judgment the evidence was ample, under the law, as correctly stated by the trial court, to justify, if not to require, such a verdict.

It may be conceded that under our "married women's act" there can be no presumption that a husband, when he receives the money of his wife, takes it, by virtue of his marital rights, as his own; also, that there is no presumption arising from the bare fact that a wife places her money in the hands of her husband, or permits him to collect it, that she intended it as a gift to him.   It may also be conceded that, in the absence of any evidence tending to show a gift, the law would imply a promise to repay it.   But, as in any other case, this implication may be rebutted by evidence, either direct or circumstantial, showing a contrary intention or understanding of the parties.   How the presumption of an implied promise may be overcome by facts and circumstances is frequently illustrated in the

case of transactions between members of the same family, as, for example, parent and child. The same principle is at least equally applicable as between husband and wife, the question always being whether, in view of the relationship of the parties, the action of the wife with reference to property which she allows her husband to receive and use is so inconsistent with an intention on her part to claim a repayment as to show that she intended it as a gift. The authorities also make a distinction in that respect between the receipt by the husband of the income of the wife's property, and the receipt by him of its principal or corpus, holding that a gift of the former may be inferred from a state of facts which might not warrant an inference of a gift of the latter. The reasons for this distinction are well stated *In re Hauer's Estate,* 140 Pa. St. 420, (21 Atl. 445.)

Under the doctrine of *McNally* v. *Weld, supra,* the evidence amply justified the jury in finding that the appellant never intended to claim a repayment of these rents; and there is nothing in *Chadbourn* v. *Williams,* 45 Minn. 294, (47 N. W. 812,) inconsistent with the view either of the law or of the effect of the evidence.

Order affirmed.

(Opinion published 57 N. W. Rep. 453.)