STATE BANK OF WINSTED v. SELMA STRANDBERG AND
ANOTHER.[1]

January 21, 1921.

No. 21,973.

**Fraudulent conveyance — conversations between grantor and grantee admissible on question of intent, even when agreement was with**

[1]Reported in 180 N. W. 1006.

**person now dead.**

1. In an action to set aside as fraudulent as to creditors a conveyance from defendant John Strandberg to defendant Selma, his wife, conversations between them which brought about the conveyance were admissible, even though the agreement had with Peter Strandberg, now deceased, through whom Selma claims title, was recounted therein. Such conversations were relevant and material upon the question of defendants' intention not to hinder, delay or defraud creditors. If plaintiff desired parts thereof not to be considered upon some particular issue, a request for an instruction to that effect should have been made. The objection to the testimony and the motions to strike went too far.

**Witness—party in interest may testify as to what she did for decedent.**

2. No reversible error was made in permitting Selma to state that she had had a talk with Peter Strandberg concerning the farm involved, for she was not asked to relate what was said and, doubtless, it already was patent to the jury from the situation of the parties that such talks must have taken place. Selma's testimony as to what she did for Peter did not come under the ban of section 8378, G. S. 1913, prohibiting a party in interest from testifying to conversations with or admissions of deceased persons.

**Fraudulent conveyance—charge to jury.**

3. The court did not err in stating to the jury that if this farm was the homestead when plaintiff took John's note it could not be said that credit was extended on the strength of his ownership, so that estoppel could be invoked against Selma.

**Verdict sustained by evidence.**

4. The evidence sustains the verdict on either of the two theories upon which the cause was submitted. It was also ample to go to the jury on a third theory not submitted.

Action in the district court for Wright county to set aside a conveyance as fraudulent as against creditors. The facts are given at the beginning of the opinion. The case was tried before Giddings, J., and a jury which returned a verdict in favor of defendants. From an order denying its motion for a new trial, plaintiff appealed. Affirmed.

*Henry Spindler* and *H. C. West,* for appellant.

*F. E. Latham* and *C. A. & V. C. Pidgeon,* for respondents.

HOLT, J.

Action to set aside a conveyance as fraudulent as to creditors. The issues were submitted to a jury, which returned a verdict for defendants. Plaintiff appeals from the order denying a new trial.

Defendants, John and Selma Strandberg, are husband and wife. They were married in 1896. In that same year Peter Strandberg, the father of John, was injured so that from then on until his death, some six years later, he was as helpless as an infant, and his care was a most arduous and disagreeable task. He lived with the young people, but the burden of his care fell to Selma. Peter owned a farm of 90 acres, the home of the parties. In 1898 he deeded this farm to John. It remained the home of John and Selma until June, 1915, when they moved to Winsted. On February 24, 1916, John deeded it to Selma, through third persons. When this was done plaintiff held a promissory note given by John in March, 1915. This note was afterwards reduced to judgment, execution was returned unsatisfied, and this action was then brought to set aside as fraudulent the transfer from John to Selma.

The complaint alleges that the transfer to Selma, on February 24, 1916, was without consideration and for the purpose of hindering and defrauding plaintiff, a creditor of John. Defendants answered separately; the substance of each answer was that the farm was in fact Selma's ever since Peter parted with the title, which was pursuant to an agreement that Selma should receive the farm in consideration of $900 to be paid to certain heirs of Peter and the care she would give him during his lifetime; that the deed was made in trust to John upon his promise to convey to her whenever she so demanded; that the agreement was performed by Selma; also that when in June, 1915, Selma consented to give up her homestead right in said farm and move to Winsted, it was upon the express agreement that John would cause the legal title to the farm to be placed in her, and pursuant to such agreements the deeds of February 24, 1916, were executed.

The 54 assignments of error are grouped and discussed by appellant under four heads: (1) Those that relate to the admission of testimony of defendants embodying statements made by Peter; (2) those that relate to testimony of what was done for Peter; (3) the reference in the

charge to the homestead rights of defendants; and (4) those that challenge the decision as not being justified by the evidence.

1. The pivotal issue in the case was the character of the transfer from John to Selma. If that was not made with intent to hinder, delay or defraud plaintiff, it could not be set aside, for there was a legal consideration. Presumptively it was fraudulent, it being from husband to wife, while plaintiff held the note of the former. The burden was on defendants to rebut or overcome the presumption. This could be done by proof of facts and circumstances negativing the existence of such an intent as, for instance, that the farm was in fact Selma's and that she had paid the consideration for it. John and Selma could also testify directly to the absence of fraudulent intent, and fortify this by relating the conversation between them which resulted in the transfer of the title to Selma. Hence it must be admitted that the conversations which were had between John and Selma in relation to the deeds executed in 1916 were competent. Schmidt v. Baumann, 36 Minn. 189, 30 N. W. 765; Fredin v. Richards, 66 Minn. 46, 68 N. W. 402; McDonald v. Smith, 99 Minn. 42, 108 N. W. 291. It is not to be urged in an action to set aside a conveyance because fraudulent as to creditors that the purpose of the grantor and grantee and their motive and intent and the consideration for the conveyance may not be shown, though in making the showing resort must be had to conversations between the parties to the deed. See Farnham v. Kennedy, 28 Minn. 365, 10 N. W. 20. Such testimony is evidence as to a relevant fact and is not hearsay.

These conversations between John and Selma being admissible for the purpose indicated, could not be excluded because therein were recounted the promise and agreement of Peter with Selma, whereby she was to have the farm for caring for him. We need not now decide, but may assume the rule to be, that plaintiff by proper request would have been entitled to an instruction that the testimony as to what Peter had said should not be considered in determining whether or not he had in fact made an agreement with Selma. But no request was made to limit the effect of this testimony to any particular issue. And, being admissible for the purpose of proving that there was no intent to defraud, the general objection to its reception was properly overruled. "Evidence legal for

some purpose cannot be excluded because the jury may erroneously apply it otherwise. The court, on request, will always guard against such an error." Trenton Passenger Ry. Co. v. Cooper, 60 N. J. Law, 219, 37 Atl. 730, 38 L.R.A. 637, 64 Am. St. 592. And Wigmore says of the effect of this testimony: "It is uniformly conceded that the instruction of the court suffices for that purpose; and the better opinion is that the opponent of the evidence must ask for that instruction; otherwise, he may be supposed to have waived it as unnecessary for his protection." Wigmore, Ev. § 13.

The whole conversation between John and Selma was objected to as coming under the ban of section 8378, G. S. 1913, conversations with deceased persons by a party in interest, and on the like ground, at the close of the case, plaintiff moved to strike out all that part of Selma's testimony "in which she relates a conversation she claims to have had with her father-in-law, Peter Strandberg, now deceased, concerning what care she was giving him and that in consideration for which the said Peter Strandberg would deed the land in controversy herein to her." The same motion was made as to John's testimony. It is clear that both the objection and the motions went too far and could not be granted.

2. After testifying to the condition in which Peter's injury left him, and the care and attention she gave him, Selma was asked whether, after she had so cared for him for a few months, she had a talk with him about the land, and, over objection, answered in the affirmative. She then testified, without objection, that thereafter she continued to give the same care. Peter was paralyzed from his waist down, but the inference is that his mind and organs of speech were unaffected. No doubt Selma and he conversed frequently about the farm which furnished them a home and support. The question was perhaps improper, although Hier v. Grant, 47 N. Y. 278, points to the contrary. However, nothing not already patent to the jury was elicited. No attempt was made to show what the talk was, and no prejudice could have resulted from the ruling. We cannot understand why it was not proper to show what Selma had done for Peter during his illness. Such testimony whether given by John or Selma could not be held excluded by section 8378 above mentioned. It was testimony as to facts of which she had knowledge

irrespective of any conversation with the deceased. Veum v. Sheeran, 95 Minn. 315, 104 N. W. 135.

3. There was a $2,400 mortgage on the farm at the time John gave the note to plaintiff, and it was then the homestead of defendants. Evidently plaintiff urged estoppel against defendants, in that it had extended credit to John on the strength of his ownership of the farm. The court told the jury that this mortgage being on the farm, the owner thereof could insist that the 10 acres not embraced in the homestead eighty should be first applied upon the mortgage. And if they found the farm to have been the homestead of defendants when the note was given, the farm could not have been the basis of extending credit to John. The testimony of plaintiff gives slight, if any, foundation for the claim of estoppel, but, in view of the claim, the remarks of the court were not uncalled for, but proper.

4. The jury were charged, in substance, that, if Peter conveyed to John with the understanding that the farm was to belong to Selma, it was an absolute defense. If the evidence was not sufficient to go to the jury on this proposition there must be a new trial, even though it was ample to defeat plaintiff on the other theory on which the case was submitted, for there is no way of telling upon which one the verdict was based. The conveyance, no doubt, was upon some understanding or agreement with Peter. That may be inferred. It was not necessary to prove an agreement valid within the statute of frauds or enforceable in equity, for it had been fully executed. A consideration paid or rendered Peter by Selma was shown. Also that John took the legal title in trust for Selma. He was a competent witness to prove that fact. First Nat. Bank of Memphis v. Kidd, 20 Minn. 212 (234). The conversations between John and Selma, when the latter insisted upon John fulfilling his promise to her, were properly admitted and also disclosed the existence of an agreement or understanding with Peter that the farm was to be Selma's. The promise of John to Selma, to cause the land to be placed in her name whenever she should insist, indicates the existence of the understanding referred to by the court. We deem the evidence sufficient to support a verdict under the part of the charge referred to.

The jury were also instructed that if the farm was John's but it was

148 M.—8.

the homestead of the family, and Selma refused to relinquish her homestead right therein except upon John's promise to deed it to her, and such promise was given, pursuant to which the transfer was made, there was a legal consideration. And if the jury further found that in the transaction there was no intent on the part of John and Selma to hinder, delay or defraud creditors, defendants should prevail. No error is assigned upon the submission of the case on this theory of the defense, and there is evidence to support a verdict if founded thereon.

The defense also proved that during Peter's illness, and subsequent thereto, John told Selma, that if she would care for his father he would deed her the land, but that he wanted, for the present, to keep it in his own name. These talks were admissible upon the issue of fraud and consideration as first above indicated. The court could well have submitted this defense to the jury and it would have had clear support in the evidence.

We find no reversible error in the record.

The order is affirmed.

DIBELL, J. (concurring).

I concur in the result.