MACKEY J. THOMPSON v. AUGUST SCHIEK AND OTHERS.[1]

May 13, 1927.

No. 25,938.

**Finding that deeds were fraudulent as to husband's creditors.**

1. The evidence supports a finding that a deed conveying the fee title from a husband and wife to their daughter and a deed from the daughter to the mother conveying a life estate were executed without consideration, and that, if the deeds were allowed to stand, the husband would be insolvent and his creditors defrauded.

**Finding sustained that agreement to repay moneys was not definitely proved.**

2. The wife had advanced various sums of money to the husband long prior to the execution of the deeds. The court found that an agreement for the repayment of the money had not been proved with the requisite degree of certainty. The testimony of the wife that there was such an agreement was not conclusive in view of the circumstances related in the opinion, and the finding is sustained.

[1]Reported in 213 N. W. 911.

Evidence, 23 C. J. p. 47 n. 31; p. 48 n. 39.
Fraudulent Conveyances, 27 C. J. p. 641 n. 35; p. 830 n. 17; p. 831 n. 23.

See note in 17 A. L. R. 728; 12 R. C. L. 594; 2 R. C. L. Supp. 1461;
4 R. C. L. Supp. 762.

Action by the plaintiff receiver in the district court for Faribault county to set aside as fraudulent as to creditors two conveyances made by defendants. The case was tried before Haycraft, J., who found for plaintiff. Defendants appealed from an order denying their motion for a new trial. Affirmed.

*H. L. & J. W. Schmitt & H. W. Volk*, for appellants.
*Putnam & Carlson*, for respondent.

Lees, C.

The Wells National Bank became insolvent and was placed in the hands of a receiver on February 20, 1924. The defendant August Schiek was a director and owned 30 shares of the stock of the bank, on which he was liable to an assessment of $3,000. The bank held four notes against him aggregating $4,176.65, and he owed $5,500 to other creditors. He owned a farm in Swift county mortgaged for $5,000, some land in Oregon of no value, business property in Wells worth about $9,000, a homestead and a small parcel of adjoining land of uncertain value. On April 3, 1924, he conveyed all his real estate in Wells, except his homestead, to the defendant Myrtle Fitzloff, who is his daughter and only child. On the same day she and her husband conveyed a life estate in the property to the defendant Augusta Schiek, who is August's wife. Later in the month, Schiek sold his land in Swift county, paid his creditors other than the bank, and had about $900 left out of the proceeds of the sale. In June, 1925, judgments were entered against him on his notes to the bank and for the full amount of his stockholder's liability. Executions were issued and returned unsatisfied. This action was then brought to set aside the deeds of the Wells property on the ground that they were made in fraud of creditors. The court found in favor of the plaintiff receiver, denied a motion for a new trial, and this appeal followed.

The testimony given by Mr. and Mrs. Schiek ran thus: He and she were natives of Germany, where they were married. They came to the United States in 1882. While in Germany, Mrs. Schiek obtained 2,000 marks from her mother and turned the money over to her husband. After coming to the United States, she received 1,000 marks from her mother and gave it to her husband. They settled at Wells, where Schiek conducted a bakery and restaurant. He was also the agent of a Milwaukee brewing company and ran a saloon for a short time. For 30 years Mrs. Schiek did much of the work in the bakery and restaurant. In the year 1898 she received 11,000 marks as her share in her mother's estate and turned it over to her husband. At an earlier date she received $800 on an insurance policy carried by an uncle and gave this money to her husband. The total amount she gave him, with interest from 1898, amounts to more than the value of the property conveyed to their daughter. Mrs. Schiek took no notes from her husband and held no written evidence of these transactions. Her husband never paid her any interest. She testified that she placed the money in his hands "with the understanding I get it back for my children. * * * My husband say he would give it back to me, with interest, and I said I wanted it back for the children." Asked when this occurred, she answered: "It was years ago, and then * * * he said, 'I haven't got the money now. I give it to you after a while.' "

The trial court found that if the deeds in question are allowed to stand Schiek is insolvent and cannot pay his debts; that his wife and daughter knew that the effect of the deeds was to make him insolvent; and that the deeds were made without consideration and for the purpose of defrauding his creditors and should be set aside. In reference to the alleged advances of money, the court found that, if any were made, they do not constitute a consideration for the deeds and that an agreement for the repayment thereof had not been proved with the requisite degree of certainty.

If these findings stand, the plaintiff is entitled to judgment. If they are not supported by the evidence, as urged by defendants, there should be a new trial.

Section 4 of the uniform fraudulent conveyance act (G. S. 1923, § 8478) provides that every conveyance made by a person who will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent, if the conveyance is made without a fair consideration. Section 8621, G. S. 1923, reads in part as follows:

"Where the rights of creditors * * * come in question, each spouse shall be held to have notice of the contracts and debts of the other as fully as if a party thereto."

We have frequently held that transfers between a husband and wife, whether made directly or indirectly, are prima facie fraudulent as to existing creditors, the burden being on the wife to show by clear and satisfactory evidence that a valuable consideration was paid by her or by someone in her behalf. Minneapolis S. & P. Co. v. Halonen, 56 Minn. 469, 57 N. W. 1135; Shea v. Hynes, 89 Minn. 423, 425, 95 N. W. 214; United Norwegian Church v. Csaszar, 141 Minn. 459, 170 N. W. 694; Murphy v. Casey, 151 Minn. 480, 484, 187 N. W. 416.

Payment of an honest debt is not fraudulent under the general statutes against fraudulent conveyances although it operates as a preference, the rule being that a preference by an insolvent debtor of one of his creditors can be avoided only by appropriate proceedings under the bankruptcy law and is not open to attack in an action brought by another creditor. Petersdorf v. Malz, 136 Minn. 374, 162 N. W. 474; Engenmoen v. Lutroe, 153 Minn. 409, 190 N. W. 894; Grager v. Hansen, 165 Minn. 317, 206 N. W. 440.

Hauk v. Van Ingen, 196 Ill. 20, 63 N. E. 705, touches the point raised here. It was there held that, although a wife may loan money to her husband and take security from him which will be valid against both prior and subsequent creditors of the husband, the mere fact that she lets her husband have her money to use is not sufficient as against his creditors. The contractual relations between him and her must appear by satisfactory evidence.

In Bennett v. Bennett, 37 W. Va. 396, 16 S. E. 638, 38 Am. St. 47, it was said that a mere general understanding that money ad-

vanced by the wife to the husband belonged to her and that he should be accountable to her therefor is not enough to establish the relation of debtor and creditor between them. To establish that relation as against creditors of the husband, it must appear that the money was received by him under an agreement to repay it to her or invest it for her use, and that if, without such agreement, he invests it in business and afterwards executes a bill of sale to secure her, it will be fraudulent as against existing creditors. See also In re Schmidt's Estate, 56 Minn. 256, 57 N. W. 453; Kosanke v. Kosanke, 137 Minn. 115, 162 N. W. 1060.

Citing Second Nat. Bank of Winona v. Donald, 56 Minn. 491, 58 N. W. 269; Benson v. County of Marshall, 163 Minn. 309, 204 N. W. 40; and Turner v. Gackle, 168 Minn. 514, 209 N. W. 626, defendants contend that there is nothing to contradict the testimony of Mr. and Mrs. Schiek in respect of the advancements or the understanding that the money was to be returned to the wife for her children, hence the trial court could not properly find that there was no agreement for the repayment of the money.

Whether the application of the rule of these cases should lead to a reversal is a close question. Testimony, although undisputed, is always to be considered and weighed in the light of the attending circumstances. There is nothing inherently unreasonable or improbable in the testimony of the Schieks, but there are circumstances which cast doubt on it. The claim is stale. The statute of limitations has run, but that fact alone is not conclusive against the wife, for the husband is under no duty to his creditors to interpose the statute. 27 C. J. p. 641. There is no written evidence of the receipt of the money by the husband upon a promise to repay it. The wife exacted no interest. A large portion of the money was invested in property standing in the name of the husband. He received the rents and profits without accounting for them to his wife. The deeds were made on the heels of the failure of the bank when it became evident that the husband's liability as a stockholder, added to his existing indebtedness, would nearly equal the value of his unexempt property. The daughter conveyed only a life estate to her mother, who is 75 years of age and in poor health. The value of

the life estate is probably much less than the amount of money alleged to have been advanced. Putting all these circumstances together and weighing them in the balance with the testimony of the husband and wife, we reach the conclusion that reasonable men might draw the inference that the relation of debtor and creditor between the husband and wife did not exist and was not intended, and that the testimony to the contrary is the result of an afterthought suggested by the failure of the bank.

Order affirmed.

QUINN, J. (dissenting).

I am unable to agree with the majority and therefore dissent.