TEXAS COMMERCE BANK,
Respondent,

v.

Paul J. OLSON, et al., Appellants.

No. C8–87–979.

Court of Appeals of Minnesota.

Dec. 8, 1987.

Patrick J. Leary, Quarnstrom, Doering, Pederson, Leary & Murphy, Marshall, for respondent.

Jerome S. Rice, Kari E. Nelson, Jerome S. Rice Law Offices, Minneapolis, for appellants.

Heard, considered and decided by SEDGWICK, P.J., and PARKER and HUSPENI, JJ.

## OPINION

PARKER, Judge.

Paul and Rosalie Olson appeal from a judgment entered following the trial court's denial of their motion for a new trial or judgment notwithstanding the verdict as untimely and on the merits. The Olsons challenge instructions at trial, amendment of the complaint, evidentiary rulings and denial of the motion. We reverse.

## FACTS

In March 1981 respondent Texas Commerce Bank loaned $1,875,000 to Cimmaron Oil Company. As collateral, the bank obtained a note for $500,000 that imposed joint and several liability on five guarantors, including Paul Olson. Olson filed a personal financial statement required by the bank which indicated that Olson owned certain parcels of farmland in Nobles County, Minnesota.

The day the loan was due, Cimmaron filed for protection under Chapter 11 of the federal bankruptcy laws. The bank demanded that Olson perform on his $500,000

guarantee. In August 1981 the bank sued Olson and the other guarantors in Texas. In February 1985 the bank obtained a final judgment against Olson for $1,067,366.89 plus interest. The Texas judgment was entered in Nobles County, Minnesota, on August 6, 1985.

Since 1971, the parcels identified in Olson's personal financial statement have been held at various times in Olson's and/or his wife's names. In May 1984 Olson transferred those parcels to his wife's name only. He claims the transfer was an estate-planning maneuver to provide for his wife after his death. Although Olson knew of the litigation in Texas at the time of the conveyance, he contends that his counsel's advice and the fact that he was one of five guarantors led him to believe that the farmland would not be needed to satisfy his obligation to the bank.

The bank brought an action in Minnesota to set aside the conveyances as fraudulent. The jury, using a special verdict form, found (1) that the conveyances were made at a time when Olson expected to incur debts which could not be paid as they matured, and (2) that the conveyances were made with actual intent to hinder, delay and defraud Olson's creditors. The trial court thus ordered the conveyances null and void and set them aside.

### ISSUES

1. Did the trial court commit fundamental errors of law in instructing the jury?

2. Did the court abuse its discretion in allowing the bank to amend its complaint at the close of the evidence to include a claim under Minn.Stat. § 513.25 (1986)?

3. Did the trial court's evidentiary rulings substantially prejudice the Olsons' efforts to defend against the bank's claims under Minn.Stat. § 513.25–.26 (1986)?

4. Did the trial court err in denying the Olsons' motion for a new trial as untimely?

### DISCUSSION

#### I

A. *Instruction on Presumption of Fraud and Burden of Proof*

The trial court instructed:

You are * * * instructed that the transfers between a husband and a wife are presumed to be fraudulent as to existing creditors. * * * In this case, you must find that the conveyances from Paul to Rosalie Olson of the real estate here involved, here in question, in May, 1984, were fraudulent, unless you find that Paul Olson has proved by the greater weight of the evidence; number one, at the time of the conveyances Paul Olson did not intend to or believe that he would incur debts beyond his ability to pay those debts as they matured; and number two, that no intent to hinder, delay or defraud Texas Commerce Bank existed at the time of the transfers. The greater weight of the evidence does not necessarily mean the greater number of witnesses, or the greater volume of testimony. Any believable evidence may be a sufficient basis to prove a fact. Greater weight of the evidence means that the evidence must lead you to believe it is more likely that the claim is true than not true.

Olson objected to the instructions on both the presumption of fraud and the burden of proof.

A charge which fairly, completely and correctly states applicable principles and is not unduly restrictive does not warrant a new trial. *Parr v. Cloutier*, 297 N.W.2d 138, 140 (Minn.1980). The court correctly stated that transfers between a husband and wife are presumptively fraudulent as to existing creditors. *See, e.g., Neubauer v. Cloutier*, 265 Minn. 539, 544, 122 N.W.2d 623, 628 n. 4 (1963); *Larson v. Tweten*, 185 Minn. 370, 373, 241 N.W. 45, 46 (1932).

Initially, we must determine whether this "presumption" is a procedural device or a rule of substantive law. A true presumption is a procedural device that allocates the burden of producing evidence. Minn.R. Evid. 301 & committee comment. It "does not shift to [the party against whom it is directed] the burden of proof in the sense of the risk of nonpersuasion." Minn.R.

Evid. 301. *See also In re Estate of Beecham*, 378 N.W.2d 800, 804 (Minn.1985) (presumption is not evidence); *Ryan v. Metropolitan Life Insurance Co.*, 206 Minn. 562, 566, 289 N.W. 557, 560 (1939) (presumption is mere procedural device that allocates burden of going forward with evidence). "Presumption" has also been used to refer to inferences, assumptions and matters of substantive law. Minn.R.Evid. 301 committee comment.

Our reading of Minn.R.Evid. 301 indicates that this presumption must be viewed as a procedural device only, not shifting the burden of proof to the debtor. To the extent that common law may have suggested otherwise, the enactment of the rule changed the common law. *Cf.* Minn. Stat. § 480.0591 (1974) (enabling legislation authorizes rules to supersede statutory presumptions and burdens of proof).

Our conclusion is further buttressed by case law. Numerous decisions indicate that the presumption is rebuttable. *See, e.g., Kummet v. Thielen*, 210 Minn. 302, 305, 298 N.W. 245, 246 (1941) (presumption disappears from the case when the facts are shown); *Thompson v. Schiek*, 171 Minn. 284, 287, 213 N.W. 911, 912 (1927) (transfers between husband and wife are prima facie fraudulent as to existing creditors); *State Bank of Winsted v. Strandberg*, 148 Minn. 108, 111, 180 N.W. 1006, 1007 (1921) (defendants could rebut presumption).

We must next address how this common-law presumption operates in conjunction with claims under the Uniform Fraudulent Conveyance Act. Case law suggests that the presumption's function is to shift the burden of production to the debtor on the issue of fair consideration. To rebut the presumption of a lack of fair consideration, the debtor must show by clear and satisfactory evidence that fair consideration was paid. *See, e.g., State Bank of New London v. Swenson*, 197 Minn. 425, 428, 267 N.W. 366, 367–68 (1936); *Schiek*, 171 Minn. at 287, 213 N.W. at 912; *Minneapolis Stock-Yards & Packing Co. v. Halonen*, 56 Minn. 469, 471, 57 N.W. 1135, 1136 (1894). The presumption may not be used to show the debtor's fraudulent intent when a claim requires a showing of actual intent. *See* Minn.Stat. § 513.26 (1986); *Snyder Electric Co. v. Fleming*, 305 N.W.2d 863, 867 (Minn.1981) ("creditors are to be unaided by 'intent presumed in law'" under Minn.Stat. § 513.26 (1980)).

In short, when the absence of consideration is a necessary element of the creditor's claim, the presumption assists the creditor in meeting its burden of production on that element. The creditor need only prove a lack of fair consideration if the debtor produces evidence rebutting the presumption. *Cf. Fleming*, 305 N.W.2d at 867–68 (rebutting presumption of lack of consideration arising from transaction between officer of corporation and corporation). The presumption that conveyances between spouses are fraudulent as to existing creditors ceases to have any function when overcome by clear and satisfactory evidence of fair consideration. *See Kummet*, 210 Minn. at 305, 298 N.W. at 246. The presumption does not obviate the creditor's obligation to prove the elements of a claim under the Uniform Fraudulent Conveyance Act. *See Neubauer*, 265 Minn. at 544, 122 N.W.2d at 628 (burden of proof remains with creditor to show essential elements of a claim under Minn.Stat. § 513.23 [(1960)]).

On the basis of the analysis above and the facts here, we conclude the trial court erred in giving the instruction on the presumption. The trial court failed to instruct how the presumption might be rebutted. It also instructed the jury in terms of a "presumption." That language should be excluded when there is evidence justifying a finding contrary to the presumed fact. *Donea v. Massachusetts Mutual Life Insurance Co.*, 220 Minn. 204, 213, 19 N.W.2d 377, 383 (1945). More important, the court should not have submitted the presumption to the jury, because no factual dispute warranted it. The Olsons conceded the absence of fair consideration, and the presumption could not be used to establish Paul Olson's actual intent under Minn.Stat. § 513.26. The presumption could have

served only to confuse and prejudice the jury.

The trial court's burden-of-proof instruction requires reversal. The aggrieved creditor ordinarily bears the burden of proving a conveyance is fraudulent.[1] *Fleming*, 305 N.W.2d at 867. Here the court impermissibly placed the burden of *proof* on Olson. The instructions requiring Olson to prove by the greater weight of the evidence that he did not intend to incur debts beyond his ability to pay them and that he had no intent to defraud the bank placed the risk of nonpersuasion on Olson. If the jury found Olson's evidence to be as persuasive as the bank's, but not more so, the bank would, improperly, prevail. Additionally, the last three sentences of the charge, addressing the standard of greater weight of the evidence, quote model jury instructions for the burden of proof in civil cases. *See* Minnesota Practice, CIV. JIG 70 (1986).

### B. *Instruction that Bank was an Existing Creditor*

The Olsons also appeal the trial court's instruction that "in May of 1984 the Plaintiff, Texas Commerce Bank, National Association, was an existing creditor of Paul Olson." That instruction essentially directed a verdict on that issue in the bank's favor.

■ Generally the burden of proof on an essential element of a claim is on the party who stands to benefit from establishing that element. *Chemlease Worldwide, Inc. v. Brace, Inc.*, 338 N.W.2d 428, 437 (Minn. 1983). Here the bank bore the burden of proving that it was a creditor at the time of the conveyance under applicable law. *Cf.*

*Neubauer*, 265 Minn. at 544, 122 N.W.2d at 628 (under Minn.Stat. § 513.23, burden of proof on plaintiff to show plaintiff was creditor at time of conveyance).

■ We cannot conclude that the standard for granting a directed verdict was met.

A directed verdict * * * should be granted only in those unequivocal cases where in the light of the evidence as a whole it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the entire evidence or where it would be contrary to the law applicable to the case.

*Stenzel v. Bach*, 295 Minn. 257, 260, 203 N.W.2d 819, 821 (1973). A finding that the bank was not an existing creditor would not clearly have been "contrary to the law applicable to the case." The parties have inadequately briefed which law controls the creditor issue. The trial court did not elucidate its reasons for finding the bank to be an existing creditor. On remand, the parties will have the opportunity to brief whether Texas or Minnesota law governs the "existing creditor" issue and whether the bank was such a creditor under the applicable law.[2]

## II

■ At the close of the evidence, the trial court allowed the bank to amend its complaint to include a claim under Minn. Stat. § 513.25. It refused to allow amendment to include a claim under section 513.-23.

Minn.R.Civ.P. 15.02 permits amendment of the pleadings to conform to the evidence if tried by consent. Such amendments are

---

1. The relationship of the parties may shift this burden to varying degrees. *Fleming*, 305 N.W. 2d at 867. We interpret this to mean that the presumption shifts the burden of production, but not the burden of proof, to the debtor when fair consideration is at issue. *See id.* (on claim that conveyances were made without fair consideration, the onus of proof was not on creditor alone).

2. If Minnesota law controls, *State Department of Welfare v. Thibert*, 279 N.W.2d 53 (Minn. 1979), raises the question of whether the bank was a "present [or] future creditor[ ]" within the meaning of Minn.Stat. § 513.25–.26 (1986).

There the court refused to set aside a conveyance as fraudulent under Minn.Stat. § 513.23, holding that "creditors" within the meaning of section 513.23 means "creditors existing at the time of the conveyance." *Id.* at 57. It further held that the plaintiff was not a creditor then, because at that time it had at most an unmatured claim against the defendant under Minn. Stat. § 246.53. *Id. See also* Minn.Stat. § 513.20 (1986) (defining "creditor" for purposes of Minn.Stat. § 513.20–32 as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent").

permissible at or after trial. *See, e.g., Tony & Leo, Inc. v. United States Fidelity & Guaranty Co.*, 281 N.W.2d 862, 865 (Minn.1979).

Minn.Stat. § 513.25 (1986) provides:

Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or expects to incur debts that cannot be paid as they mature, is fraudulent as to both present and future creditors.

A claim under Minn.Stat. § 513.25 was not pled and does not appear to have been tried by consent. At trial the Olsons conceded that there was not fair consideration. The bank, however, has not directed us to sufficient evidence that Olson conveyed the farmland while intending or expecting to incur debts that could not be paid as they matured. While Olson's knowledge of the pendency of the Texas lawsuit arguably bears on his intent or expectation under Minn.Stat. § 513.25, it also goes to his intent under Minn.Stat. § 513.26, a claim pled by the bank. Therefore, we cannot conclude that Olson consented to try a claim under section 513.25 by the admission of that evidence.

### III

Olson claims that the trial court's evidentiary rulings substantially prejudiced his efforts to defend on the issues of his intent to defraud creditors and his expectation that he would incur debts beyond his ability to pay them as they matured.

█ The rulings on the admissibility of evidence were correct on the claim under Minn.Stat. § 513.26 (1986). Specifically, excluding evidence of settlement agreements between the bank and other guarantors was proper. Those agreements were entered into after the conveyances and were irrelevant to show Olson's intent at the time of the conveyances. *See* Minn.R. Evid. 402 (irrelevant evidence is inadmissible).

█ Some of the excluded evidence, irrelevant to the claim under Minn.Stat. § 513.26, may have been relevant to the claim under section 513.25. Exclusion of evidence bearing on Olson's expectations as to his anticipated debts was prejudicial in light of the later amendment. Olson was prevented from introducing evidence that the 1985 Texas judgment included over $500,000 in attorney's fees. That went directly to Olson's expectation that he would incur debts beyond his ability to pay them as they matured, as well as the reasonableness of his belief as to what those debts might be.

### IV

█ Minn.R.Civ.P. 59.03 provides:

A notice of motion for a new trial shall be served within 15 days after a general verdict or service of notice by a party of the filing of the decision or order; and the motion shall be heard within 30 days after such general verdict or notice of filing, unless the time for hearing be extended by the court within the 30 day period for good cause shown.

The Olsons filed a motion for a new trial or for judgment notwithstanding the verdict. Their counsel scheduled the hearing on the motion for a new trial 42 days after the notice of filing. Their counsel selected that day because it was a convenient time for all the parties and the court.

The trial court concluded it was without jurisdiction to hear the Olsons' motion for a new trial because the hearing thereon was not held within the 30–day limit. Olson never requested an extension or attempted to bring the late hearing date to the court's attention to schedule a hearing date within the proscribed time.

Although the supreme court has held the notice's 15–day time limit for service to be jurisdictional, *Bowman v. Pamida, Inc.*, 261 N.W.2d 594, 597 (Minn.1977), it has not held the hearing's 30–day time limit to be jurisdictional. In this case the bank waived any objection it may have had to the timeliness of the hearing date: the bank's attorney's secretary indicated the hearing date was convenient, and the bank did not object to the hearing date when it was scheduled. By its own admission, the bank was aware

of the error, yet raised no objection until the 30 days had expired. The bank cannot now insist on strict compliance with the rule.

## DECISION

The trial court's placement of the burden of proof on the Olsons requires a new trial. The court erred in giving the instruction that transfers between a husband and wife are presumptively fraudulent, because the absence of fair consideration was not a disputed issue and the court failed to indicate how the presumption could be rebutted. The court also erred in directing a verdict that the bank was an existing creditor at the time of the conveyance. Because a claim under Minn.Stat. § 513.25 was not tried by consent, amendment was improper. The court's evidentiary rulings were correct with respect to the Minn.Stat. § 513.26 claim, but prejudicial with respect to the section 513.25 claim. The new-trial motion was timely, because the bank waived its objection to the timeliness of the hearing.

Reversed and remanded for a new trial.