IMPERIAL DEVELOPERS,
INC., Respondent,

v.

SEABOARD SURETY CO., a
foreign corp., Defendant,

L & D Trucking, a/k/a L & D Trucking,
W.B.E., Inc., Appellant.

Nos. C0–93–1858, C2–93–2235.

Court of Appeals of Minnesota.

June 21, 1994.

Review Denied Aug. 24, 1994.

Alan M. Anderson, Minneapolis, for appellant.

Gerald L. Svoboda, Richard G. Jensen, Mary Sue Vorbrich, Minneapolis, for respondent.

Considered and decided by HUSPENI, P.J., and KALITOWSKI and AMUNDSON, JJ.

## OPINION

HUSPENI, Judge.

Appellant L & D Trucking challenges the amount of damages awarded by the jury in this promissory estoppel action, the entry of summary judgment in favor of respondent Imperial Developers on L & D Trucking's counterclaim for defamation and unfair trade practices, and the result of several posttrial motions. Because we find that the evidence supports the jury's damage award, but that genuine issues of material fact exist regarding L & D Trucking's claims for defamation and unfair trade practices, we affirm in part, reverse in part and remand for further proceedings.

## FACTS

Imperial Developers, Inc. (Imperial) is a contractor that performs excavation, street reconstruction and other related projects. In connection with its work, Imperial occasionally removes or imports earth material to complete a particular job. L & D Trucking, W.B.E., Inc. (L & D) is a trucking company that hauls sand, gravel and other aggregate products within the Twin Cities and is insured by Seaboard Surety Company (Seaboard). In 1990, L & D was the trucking contractor on the Highway 394 reconstruction project, on which Seaboard issued a payment bond.

In April 1990, Kraus–Anderson Construction Company (Kraus–Anderson) asked Imperial to submit a bid on the Galleria Shopping Center project (Galleria Project) in Edina. Kraus–Anderson was the general contractor for the Galleria Project and needed a subcontractor to perform the demolition and earth work. Imperial determined that approximately 130,000 cubic yards of sand would have to be removed from the site. Consequently, Imperial began looking for someone to purchase the sand.

Upon learning that the Highway 394 reconstruction project would require importing a large amount of earth fill, Imperial contacted L & D. L & D orally agreed to purchase 100,000 cubic yards of sand for $.75 per cubic yard. Imperial relied on this purchase in submitting its bid to Kraus–Anderson and was subsequently awarded the contract on the Galleria Project.

In early September 1990, Imperial instructed L & D to begin removing sand from the site. L & D contacted Imperial several days later and stated that it was mistaken about the amount of sand it could purchase. L & D offered to purchase 15,000 cubic yards of the sand for $.30 per cubic yard. Imperial agreed, and L & D eventually hauled away 50,000 cubic yards of sand. L & D's failure to pay for this sand led Imperial to bring an account due claim against Seaboard.

L & D offered to remove the remaining 50,000 cubic yards of sand at a cost to Imperial of $.50 per cubic yard. Imperial rejected this proposal and filed suit against L & D for breach of contract and promissory estoppel. The $84,492 in damages claimed by Imperial with regard to its promissory estoppel claim consisted of out-of-pocket expenses incurred in the removal of the remaining 50,000 cubic yards of sand.

After Imperial commenced its lawsuit against L & D, Imperial's president told a

project manager at Kraus–Anderson that L & D "does this (breaches contracts) to people all the time." L & D counterclaimed when it learned about this communication, alleging defamation and unfair trade practices. It also included an account due claim.

Seven months before trial, L & D made Imperial an offer of judgment, which Imperial rejected, to settle the parties' respective account due claims. The district court granted Imperial's motion for partial summary judgment, dismissing L & D's defamation and unfair trade practices claims for lack of evidence on which to base an award of compensatory damages. On the day of trial, the parties stipulated to liability on the account due claims. The remaining claims were tried to a jury.

The jury returned a verdict in favor of Imperial on its promissory estoppel claim and awarded $42,246 in damages, exactly half the amount requested by Imperial. After subtracting the stipulated set-off and adding prejudgment interest and costs and disbursements, the trial court entered judgment in favor of Imperial for $39,683.14.

## ISSUES

1. Does the evidence support the jury's damage award?

2. Did the district court err by entering partial summary judgment in favor of Imperial on L & D's claims for defamation and unfair trade practices on the basis that no evidence existed on which to base an award of compensatory damages?

3. Were the trial court's rulings on various posttrial motions erroneous?

## ANALYSIS

### I. Damage award

■ In reviewing a damage award, this court must consider the evidence in the light most favorable to the verdict. *Rayford v. Metropolitan Transit Comm'n*, 379 N.W.2d 161, 165 (Minn.App.1985), *pet. for rev. denied* (Minn. Feb. 14, 1986). A damage award may be set aside only if it is "manifestly and palpably contrary to the evidence." *Levienn*

*v. Metropolitan Transit Comm'n*, 297 N.W.2d 272, 273 (Minn.1980).

■ L & D asserts that Imperial is not entitled to $48,066 allegedly owed to Ideal Trucking (Ideal) because this amount was neither invoiced nor paid by Imperial. We disagree. Ideal trucking tickets document the types of trucks used and the number of hours spent removing sand from the Galleria Project. In addition, Imperial's president testified that the debt was legitimate and would be paid in the near future. L & D had ample opportunity at trial to argue the legitimacy of the debt, an issue properly before the jury, and the evidence reveals that a jury reasonably could have concluded that the debt existed.

■ L & D also contends that the damages are speculative because Imperial estimated the amount of the debt. *See Sievert v. First Nat'l Bank in Lakefield,* 358 N.W.2d 409, 415 (Minn.App.1984) (damages that are speculative, remote or conjectural are not recoverable), *pet. for rev. denied* (Minn. Feb. 5, 1985). Again, we disagree. Proof of the amount of damages to an absolute certainty is not required; the loss need only be established to a reasonable certainty. *See Bonhiver v. Graff,* 311 Minn. 111, 132, 248 N.W.2d 291, 304 (1976); *Austin v. Rosecke,* 240 Minn. 321, 322, 61 N.W.2d 240, 242 (1953). Here, Imperial multiplied the number of hours Ideal incurred by the average rate in the industry for the type of truck used, minus $2 per hour. This calculation is reasonable, and L & D offered no evidence to rebut the inference regarding the amount of damages. *See Hydra–Mac, Inc. v. Onan Corp.,* 450 N.W.2d 913, 921 (Minn.1990) (once a reasonable inference regarding damages is raised, defendant is liable unless the inference is rebutted).

■ L & D further asserts that $5,762.70 must be deducted from the damage award because Imperial gained this amount by selling some of the sand. Imperial concedes that the proceeds from the sale should be deducted, but claims that the jury's award already accounts for the sale. We agree. Because Imperial sought twice the amount of damages that it actually received, it is likely

that the jury considered this amount when it reduced the award. The same is true regarding the $2,329 that L & D claims should be deducted for hauling dirty sand rather than clean sand, and the $32,000 that it claims should be deducted because Imperial was able to use the value of this sand in other projects it worked on. It is impossible to determine exactly which amounts the jury deducted and which amounts it included in its damage award. More important, however, is that the evidence as a whole supports the jury's award of $42,246. Because L & D's debt to Ideal is alone sufficient to support the jury's award, the award is not manifestly contrary to the evidence.

## II. Summary judgment

L & D contends that the district court erred by entering partial summary judgment in favor of Imperial on L & D's claims for defamation and unfair trade practices on the basis that L & D failed to provide evidence on which to base an award of compensatory damages.[1] We agree.

### A. Defamation

■ The elements of a common law defamation action are that the defamatory statement (1) is communicated to someone other than the plaintiff; (2) is false; and (3) tends to harm the plaintiff's reputation and lower him in the estimation of the community. *Stuempges v. Parke, Davis & Co.,* 297 N.W.2d 252, 255 (Minn.1980). In order for a statement to be defamatory per se against a corporation, it must tend to injure the credit, property, or business of the corporation. *Advanced Training Sys. v. Caswell Equip. Co.,* 352 N.W.2d 1, 10 (Minn.1984).

■ By asserting that L & D regularly breaches contracts, Imperial's president clearly disparaged L & D's business reputation, and such a statement is defamatory per se. *See Becker v. Alloy Hardfacing & Engineering Co.,* 401 N.W.2d 655, 661 (Minn.1987) (false statements about a person's business, trade, or professional conduct are defamatory per se). Where a statement is defamatory per se, general damages are presumed. *Id.*

In *Becker,* the Minnesota Supreme Court unquestionably rejected Imperial's argument that it successfully rebutted the presumption of general damages. In that case, the court noted that:

> Recent commentators have suggested that some showing of harm to reputation, either by inference or direct evidence, should be required before allowing recovery of damages. Appellants have failed to convince us that we should overrule long-established precedent in favor of a new rule. We reaffirm the rule that where a defendant's statements are defamatory per se, general damages are presumed.

*Becker,* 401 N.W.2d at 661 (citations omitted). Because material issues of fact exist, L & D's defamation claim should have gone to the jury, where Imperial would be free to argue that L & D suffered no harm by the remark. *See, e.g., Anderson v. Kammeier,* 262 N.W.2d 366, 372 (Minn.1977) (no compensatory damages awarded because factfinder determined that no pecuniary loss occurred).

### B. Unfair trade practices

■ Material issues of fact also exist regarding L & D's unfair trade practices claim. Unfair trade practices include disparagement of "the goods, services, or business of another by false or misleading representation of fact." Minn.Stat. § 325D.44, subd. 1(8) (1992). Imperial contends that disparagement claims require proof of special damages. *See Advanced Training,* 352 N.W.2d at 7 (a plaintiff may not recover for product disparagement unless he is able to prove special damages in the form of pecuniary loss directly attributable to the defendant's false statement). We disagree. Long before Minn.Stat. § 325D.44 was enacted, *Advanced Training* involved a product disparagement claim. Courts consistently distinguished between product disparagement, which is not actionable per se under common law, and business disparagement. *See Larson v. R.B. Wrigley Co.,* 183 Minn. 28, 30, 235 N.W. 393, 394 (1931) (words that directly disparage a person in his business are actionable per se);

---

1. The Kraus–Anderson project manager stated that he did not believe the statement and that it did not lower his estimation of L & D.

*Erick Bowman Remedy Co. v. Jensen Salsbery Lab.,* 17 F.2d 255, 258 (8th Cir.1926) (a publication that merely disparages goods or property by making accusations against the quality, purity or value of the product is not actionable per se). Absent specific legislative language to the contrary, we find no reason to treat business disparagement differently under the statute than it is treated under common law.[2] As a result, we remand L & D's defamation and unfair trade practices claims for trial.

### III. Posttrial motions

■ L & D contends that it is entitled to $344.23 in prejudgment interest on its account due claim. We disagree. The trial court already accounted for the interest when it subtracted the stipulated amount ($7,090.58) from Imperial's damage award and calculated Imperial's prejudgment interest on this lower amount.

■ L & D further asserts that Imperial is not entitled to prejudgment interest on the jury's damage award because its motion was untimely. We disagree. The motion was not untimely; it was made within 15 days after notice of filing. *See* Minn.R.Civ.P. 59.03. The hearing was not held within the 30–day period, *see id.,* but unlike the jurisdictional time limit for service and filing, the hearing date requirement is not absolute. *Texas Commerce Bank v. Olson,* 416 N.W.2d 456, 462 (Minn.App.1987). Moreover, L & D's own posttrial motions were scheduled to be heard on the same date. Because L & D did not object to the hearing date when it was scheduled, it waived any objection it may have had to the timeliness of the hearing date. *See id.*

■ L & D also contends that the jury award includes the stipulated amount of Seaboard's liability, and therefore the $14,334.60 judgment should be credited against Imperial's damage award. We disagree. The jury was not presented with the account due claim. The special verdict form related only to Imperial's claims for breach of contract and promissory estoppel. Because the claims were entirely separate at trial, L & D is not entitled to have the jury award reduced.

■ Finally, L & D asserts that it is entitled to costs and disbursements under rule 68. We agree. Rule 68 addresses the procedure to be followed in making an offer of judgment or settlement and states in relevant part:

> If the judgment finally entered is not more favorable to the offeree than the offer, the offeree *must* pay the offeror's costs and disbursements.

Minn.R.Civ.P. 68 (emphasis added). Hence, we conclude that an award of costs and disbursements under the rule is not discretionary.

Here, L & D made Imperial an offer of judgment on October 26, 1992, for $14,361.60 against L & D on Imperial's account due claim and $7,090.58 against Imperial on L & D's account due claim. Imperial refused to accept the offer and continued with the litigation. On the first day of trial, the parties stipulated to facts concerning the account due claims, and the trial court directed a verdict in favor of each party on those claims. Final judgment entered was the same as, not more favorable than, that offered by L & D seven months earlier. In denying L & D's motion, the trial court erroneously applied standards set forth in Minn.Stat. § 549.04.

■ Imperial argues that L & D is not entitled to costs and disbursements because the final judgment was more favorable to Imperial than L & D's offer. We disagree. L & D's offer was not to settle Imperial's promissory estoppel claim; it was an offer to settle the parties' respective account due claims. Rule 68 does not require that the party offer to settle all claims comprising the lawsuit in order to recover costs and dis-

---

2. We recognize that the Eighth Circuit has held that proof of special damages is required in business disparagement claims. *See Amerinet, Inc. v. Xerox Corp.,* 972 F.2d 1483, 1502 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993). The court relied on *Ad-* *vanced Training Sys., Inc. v. Caswell Equip. Co.,* 352 N.W.2d 1 (Minn.1984), in reaching its decision. We do not find *Amerinet* persuasive, however, because the court did not distinguish between product and business disparagement.

bursements related to an individual claim. The purpose of the rule can be realized where only part of the litigation is successfully settled because valuable time and expenses are still ultimately reduced. Because L & D is entitled to recover costs and disbursements under rule 68, we remand the issue for a proper assessment of costs and disbursements related to the account due claims between October 26, 1992, and the first day of trial.

## DECISION

The evidence supports the jury's damage award. Genuine issues of material fact exist regarding L & D's claims for defamation and unfair trade practices, and therefore summary judgment was improper. Imperial is entitled to prejudgment interest on the jury's damage award, but L & D is not entitled to prejudgment interest on its account due claim. L & D is entitled to costs and disbursements under rule 68 for time spent on the parties' respective account due claims from the date of its settlement offer to the first day of trial.

**Affirmed in part, reversed in part and remanded.**